## MARY SUSNIK v. OLIVER IRON MINING COMPANY.[1]

December 21, 1934.

No. 30,147.

*Dennis F. Donovan,* for relator.

*Andrew Nelson* and *John G. Cedergren,* for respondent.

[1]Reported in 258 N. W. 23.

JULIUS J. OLSON, JUSTICE.

*Certiorari* to review an order of the industrial commission awarding compensation.

Frank Susnik was a contract miner doing underground work in a mine operated by the Oliver Iron Mining Company. He had worked in this mine over a period of years. At the time of the accident he was digging with a pick when a quantity of ore dropped upon his leg and chest. He was struck with such force that he fell. There was a sufficient quantity of ore falling to require his working partner's aid to pull him out. When he was extricated he perspired and felt dizzy. His left side hurt him, and he could do no more work during that shift but remained in the pit. He was taken to his home at Mountain Iron and went to the company doctor for attention. This injury occurred on December 19, 1930. His leg was placed in a cast on the day of the accident and his chest strapped. Thereafter he spent about eight weeks at his home lying down most of the time and being taken by his son to the doctor's office from time to time for further treatments. During this period he received compensation. Some three months later he tried to go to work again as a miner but was unable to endure it and had to quit in a few days. He testified that his whole body felt sore, and it was hard for him to breathe. He again went home and was there a period of approximately a week or two and again tried to do his usual work but found he had to quit after two days' trial on account of pains. This happened several times, with the same result. As a consequence he did practically no work during the entire year of 1931. In January, 1932, he started to work as a watchman. This job involved very little muscular exertion. He had at all times since the accident suffered many and varied pains and ailments which he claimed did not exist before. It was also claimed in his behalf that he had never been in any serious accident nor had he suffered any disabling injury prior to the accident hereinbefore referred to except that he suffered an injury to his elbow when he was a mere child three years of age. Prior to the accident he had always worked hard, as a miner must, and had experienced no such ailments as beset him after the accident.

In September, 1931, Dr. King of Eveleth examined Susnik and found that he was suffering from a pain in the chest; that he had a bad cough and experienced considerable difficulty in breathing. His heart was moderately enlarged, and there was a heart murmur. The doctor made a diagnosis of pleurisy in the left side. There was medical testimony at the trial that a man who has been engaged in underground mining over a long period of time oftentimes becomes afflicted with pneumoconiosis. A person in that situation is more susceptible to pleurisy from trauma than a well man. Dr. King gave it as his opinion that "in view of all negative history as to contagious or infectious diseases, this man sustained such an injury—I would say it's a contributory factor in his disability at the present time." He said further: "Many men have this so-called disease without being disabled. Many miners work with it for years without disability, although they cough and expectorate a good deal. They continue working for a great period of time without any disability whatsoever." Dr. Cheney said that disability due to this condition is usually not sudden but very gradual and insidious.

The referee for the commission made findings sustaining the employe's claim to compensation. Relator appealed to the industrial commission upon the ground that the award was not based upon the evidence and was contrary to law. Before the commission had acted upon the referee's findings it appointed the Mayo Clinic at Rochester, Minnesota, as a neutral physician to examine the evidence in the case as well as the employe himself and after such examination to make a report and findings. Dr. Willis S. Lemon of the Mayo Clinic, a man of recognized learning, ability, and experience, took the matter in hand pursuant to the order of the commission in that behalf. He made a very complete and comprehensive report. The report is too lengthy to be included here, but the conclusion reached by the doctor seems appropriate. It reads as follows:

"As a result of all of the examinations, it seems possible to say that this patient had damaged organs including the heart and the lungs, preceding his accident, but the degree of damage was in--

sufficient to overcome his functional reserve and he was competent to do his work. At the present time, he has diseased organs, but has lost his competency to do work and he will never be able again to undertake his occupation as a miner or any other occupation which involves hard labor. There seems no doubt that the accident in December, 1929, [conceded to be 1930] was at least a contributing cause bringing about his present complete disability. It is also true that had no accident occurred, the present state of disability would have appeared at some indeterminate future time."

Relator was permitted to cross-examine the doctor. The examination covers a wide field. Counsel for relator with characteristic thoroughness left nothing to chance, and apparently nothing was overlooked. Space forbids extensive quotations from the doctor's testimony, but there are certain parts which we deem appropriate to the question presented for decision. The following appears:

Q. "Doctor, having in mind what you know of the case, isn't it a fact that it is difficult for you to definitely state that the accident described had any causal connection with the disability found by you in Mr. Susnik?

A. "I should not like to say that.

Q. "To put it another way, Doctor, as between accident on the one hand and the advanced condition of pneumoconiosis and heart disease on the other, isn't it practically impossible to state that the accident of December 19, 1930, had anything to do with the present disability of the employe?

A. "I don't think so. If I understand your question correctly, you want me to tell—or ask me a leading question, whether or not I think the accident had anything to do with his disability?

Q. "Yes.

A. "I think it did.

Q. "In what respect?

A. "I think that in all cases where a combination of organic function is involved, it usually needs only some slight added strain to bring about disability—*I think that accident was that added strain.*" (Italics ours.)

And further:

Q. "In the concluding paragraph of your report to the industrial commission in this case, you stated this finding: 'As a result of all of the examinations it seems possible to say that this patient had damaged organs, including the heart and the lungs preceding his accident, but the degree of damage was insufficient to overcome his functional reserve and he was competent to do his work?'

A. "Yes, sir.

Q. "And you also state in the final paragraph embodying your conclusions: 'At the present time he has diseased organs, but has lost his competency to work and he will never be able again to undertake his occupation as a miner or any other occupation, which involves hard labor.' State whether as a result of this cross-examination you have in any manner or any degree changed that conclusion.

A. "No, sir.

Q. "In other words, you consider this condition from which Mr. Susnik is now suffering and from which he has suffered since the accident, as it appears from his history, that it is a permanent condition?

A. "He has permanent and total disability so far as his occupation is concerned.

Q. "And he is totally disabled for the performance of any continuous hard manual labor?

A. "I think so."

Thereafter the entire case was placed before the industrial commission for decision. The commission unanimously determined "that the findings of fact and award of compensation of Charles A. Hatch, referee, filed herein on June 8, 1933, be, and the same hereby are adopted as the findings of fact and award of compensation of the commission herein, and the order of said referee in said matter is hereby in all things affirmed."

It is relator's claim that there is no evidence upon which a recovery can be based. From what we have heretofore quoted it would seem that relator is in error in this respect. Of course there

134

is much evidence opposed to what has been quoted. The doctors for relator and those for the employe are not in harmony. Their views differ widely. The opinion of Dr. Lemon, the neutral physician, seems to us very valuable and undoubtedly so appeared to the industrial commission. If in fact the happening of this accident was "the trigger that shot him off in decompensation" (the quotation is from Dr. Lemon's testimony), then clearly under our decisions the employe should be entitled to compensation. We hold without further discussion that there was a fact question for determination and that the determination made by the commission has adequate support in the evidence. We cannot try fact issues. These are properly and necessarily determined by those clothed under the law with that responsibility.

The aggravation of an existing malady or disease is compensable. Klika v. Independent Sch. Dist. 161 Minn. 461, 202 N. W. 30; 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 10397, and cases cited.

After the employe's death a post-mortem was had upon his body. Relator has filed a petition to remand the case to the industrial commission for further hearing on the ground of newly discovered evidence gained from such post-mortem. We are asked to reverse the commission's order and award or that the case be remanded to the industrial commission for further hearing on the ground of newly discovered evidence. The motion is based upon affidavits. In behalf of the deceased employe affidavits have been filed in opposition. Having carefully examined these, we find substantially the same irreconcilable conflict in respect of the issues involved as appeared at the trial. The doctors for relator contend that their diagnosis was correct and that the post-mortem establishes their former views beyond question; the doctors for the employe retain substantially their former opinions and point to the same post-mortem as their vindication. We can see no benefit in reopening the case in view of the sharp conflict existing between these forces. Obviously the fact question still remains a matter for discussion and difference of opinion amongst these medical experts. They were in disagreement while the employe was alive, and his death has not served to bring about a reconcilement of

variant medical views. We think these differences of opinion may as well be permitted hereafter to "rest in peace" with the mortal remains of the unfortunate Susnik.

The motion to remand is denied. The writ is discharged, and the commission's award affirmed. Respondent will recover $100 attorneys' fees in this court plus statutory costs and taxable disbursements.