FLORENCE MARIE BRONSON v. NATIONAL BATTERY BROADCASTING COMPANY, INC. AND ANOTHER.[1]

June 11, 1937.

No. 31,212.

[1]Reported in 273 N. W. 681.

*Tautges, Eichelzer & Tautges* and *K. A. Campbell,* for relator.
*Reynolds & McLeod,* for respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission deny-ing compensation for the accidental death of relator's husband, Philip Bronson, while in the employ of the National Battery Broad-casting Company, Inc., hereinafter referred to as KSTP.

There is no controversy about these facts: For more than three years Philip Bronson was employed by the respondent KSTP, as production manager, at the salary of $350 per month at the time of his death. He left surviving relator, his widow, and two minor children. The immediate cause of his death was that, at the inter-section of Colborne street with West Seventh street in St. Paul, the automobile he was driving crashed into a signal standard, located in the center of Seventh street. Bronson was thrown out and so severely injured that he died within a few hours without regaining consciousness. The accident occurred at about 1:10 a. m. of Octo-ber 7, 1934. KSTP has a studio in the St. Paul Hotel, St. Paul. It has another in Minneapolis. The duties of Mr. Bronson were not confined to the studios nor to any set hours. While his main work was in the St. Paul studio, he also did work in the one at Minneapolis. In the afternoon of October 6, 1934, he broadcast on the University campus the football game there played. Another executive employe took him to his home, 1121 Goodrich avenue, St. Paul. In the evening he attended a party at the home of Mr. Sather, 1900 Princeton avenue, in St. Paul. He left there, after midnight, and was next seen as the accident took place about 1:10 a. m. of the 7th of October.

The commission found that "Philip Bronson was employed by the National Battery Broadcasting Company at a monthly wage of $350.00 under a Minnesota contract of hire. That on October 7, 1934, said employe sustained an accidental injury to his person resulting in his death on said date," and adopted this finding of the

referee: "That the accident and injuries herein did not arise out of or during the course of employment."

This last finding controls the decision and is vigorously attacked by relator as not supported and as contrary to the evidence. The evidence is in accord that as production manager Mr. Bronson had access to the studio of KSTP in the St. Paul Hotel at any and all times of day and night. He typed or dictated the continuity text of programs, and had a typewriter on his desk at the studio. He also used a typewriter at his home in the work of his employment. He was in command of his time and could devote himself to his work whenever and wherever he deemed it necessary. He often remained in the studio after the broadcasting ceased, that is, after one o'clock in the morning. He gave talent auditions and was continually on the lookout for radio talent. So were other departmental heads of the employer. The wide scope of his duties justified him in undertaking a trip to the studio in the St. Paul Hotel at any time of night or day or to look for radio talent. In this case relator centered her efforts to show that the visit to the Sather home was in search of new talent and that in leaving that home Mr. Bronson was on his way to the KSTP studio in the St. Paul Hotel to do some work which his employment required to be done at that time.

Where the accidental injury does not occur upon the premises of the employer, nor while the employe is actually engaged in the work of the employment, nor at a place where his presence is required in the performance of his work, it is realized that it is extremely difficult for the dependents of an employe killed in an accident to prove that it arose out of and in the course of the employment. But nevertheless the law places the burden upon the one seeking compensation for an employe's accidental death to prove that as a fact. In the instant case the visit at the Sather home furnishes little or no material evidence on the proposition. The accident did not occur either on the journey to that home nor on the return therefrom to his own home, for evidently he drove past and away from his home in order to reach the place where injured. The important evidence must be sought in the destination and ob-

ject of decedent after he left the Sather home. Was he bound for the St. Paul studio to do some necessary work there required to be done? There was evidence from which the inference could be drawn that all the work required of him in regard to the next broadcast scheduled for the afternoon of the seventh had been completed. While there is abundant testimony that Bronson often remained at the studio late and after the broadcasting ceased, there is none that he would leave home or any other place to go there after midnight. It would be something unusual to cause an employe who has attended faithfully to the duties of his employment until an hour after midnight to turn away from his home for a three- or four-mile drive to his employer's office. Nothing was shown that demanded Bronson's presence at the studio at that time of night. The law is well settled that a finding of fact of the industrial commission will not be overturned unless against the manifest preponderance of the evidence. Of the many cases cited by relator it is sufficient to note Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428; Henry v. D. A. Odell Motor Car Co. 191 Minn. 92, 253 N. W. 110; Nehring v. Minnesota M. & M. Co. 193 Minn. 169, 258 N. W. 307. We may add Whalen v. Buchman, 200 Minn. 171, 273 N. W. 678. In none of the cases cited by relator was the commission's finding of the pivotal fact whether the accidental injury arose out of and in the course of the employment disturbed or reversed except in Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913, and in Grina v. Stenerson Bros. Lbr. Co. 189 Minn. 149, 248 N. W. 732. As we view the evidence here it does not call for a finding that the fatal accident arose out of and in the course of the employment. Indeed, it can well be seen how reasonable minds might fail to find therein a substantial basis for concluding that Bronson was at that moment in the performance of his duties as an employe. At any rate, all available testimony was before the commission pertaining to scope of his work, his time of doing it, whether anything was required of him before the Hupmobile broadcast in the afternoon of the seventh, whether or not Bronson had finished all he had to do therewith, the circumstance of the typewriter used in his work at home being out for

repairs, his knowledge that his wife's relatives might come to the studio in the St. Paul Hotel, his declared intention with respect to his work, his arrangement to play golf at 7:00 or 7:30 a. m. of October 7; all furnished material from which reasonable minds may not arrive at the same conclusion in respect to the object and purpose of his driving at the time and place of injury. The car was his own, and he was privileged, no doubt, to drive for his own pleasure whenever his work permitted. We cannot disturb the finding of the commission here attacked.

Relator called an expert to prove that a practical route to take in driving from the Sather home to the St. Paul studio was through the intersection where the accident took place. On objection this was excluded. A map of St. Paul showing the streets is in the files. There is no evidence that any of the streets depicted were obstructed; and it would seem to require no expert to determine whether going by way of the place of accident was not as suitable as some others that might have been taken in driving from the Sather home to the St. Paul Hotel. At any rate, the route taken is not of sufficient importance to call for expert testimony, and with the map of the streets and testimony as to the location of the residence and places involved, the commission could well dispense with the expert testimony offered.

The writ is discharged and the decision is sustained.