## WALTER E. HILL v. INA UMBEHOCKER AND ANOTHER.[1]

January 7, 1938.

No. 31,492.

*Cox, Weeks & Kuhlman,* for relator.
*L. N. Foster* and *E. A. Linnee,* for respondents.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission denying employe-relator compensation.

Disposition of the case requires a résumé of the facts. Relator is a large and robust man, weighing 200 pounds, six feet in height, 37 years of age at the time of hearing (1936), and one who has been engaged in manual endeavors since reaching manhood's estate. He

[1]Reported in 277 N. W. 9.

is a skilled and capable bricklayer, his work in that direction dating back to 1920. In April, 1923, while engaged in that kind of work, he fell and sustained very severe injuries consisting of a compression fracture of the second lumbar vertebra and a fracture of the lower right leg. He was hospitalized some three months. Although doing some work during the remainder of that year, he was partially disabled at least until December. The next year he resumed his work as a bricklayer and did full-time and satisfactory work in that line. In 1925 he made a lump sum settlement in the amount of $1,000 for the injuries received in 1923, in the meantime having secured the weekly benefits, hospitalization, and medical care provided by the compensation act. In July, 1925, he went to Tacoma and there steadily continued his work until the depression came in the late fall of 1929. Since arriving at Tacoma he worked at his trade whenever such work was available to him, and, in addition, has grubbed and cleared the larger part of a ten-acre tract of land acquired there in 1925.

In February, 1933, he came back to this state, for the purpose of operating his sister's ice business at Princeton, her husband having died the preceding December. The sister for whom he so worked is respondent-employer, Mrs. Umbehocker. On April 27, while in the act of sliding a large piece of ice, weighing approximately 125 pounds, from his shoulder into an icebox, he suffered a wrenching in the lower portion of his back, causing severe pain in that region and down the side of his left thigh to the knee. He rested a few moments and then proceeded on his daily routine. It so happened, however, that no further ice was required by remaining customers that day. The next three days he carried no ice because of this lingering pain in his back. He seemed to be "rather stiff and unable to do anything." He then went back to his work and stayed at that job until the middle of June, when his sister sold her ice business. Since the April injury, however, his testimony is that he did not "handle any of the large chunks" but had a helper to do that for him. Prior to the accident he had not required any assistance. During the balance of June he did odd jobs for his sister in the way of carpenter work. On July 5 he started back to Tacoma with his

family, driving his car and arriving there about the middle of July. He claims to have suffered pain during the entire trip, but nevertheless stuck to his wheel. Arriving there, he again engaged in his work as a bricklayer whenever opportunity afforded. He never made any claim to his sister for compensation nor even a suggestion to the effect that he deemed himself entitled to any compensation or that the claimed injury of April 27 had caused an aggravation of a preëxisting condition.

In June, 1935, his sister visited him at Tacoma. Then, apparently for the first time, more than two years after the April, 1933, accident, compensation under the act was talked about. Not until September, 1935, two and one-half years after the alleged accident, was the insurer or industrial commission informed or notified of the claimed accident and the presently claimed liability.

During the early part of 1935 he was treated for the spinal fracture resulting from the 1923 accident. He submitted to a fusion operation and remained in the hospital until sometime in April. This operation is described as an "Albee bone graft," which embraces vertebrae from the twelfth dorsal to the fourth lumbar region of the back. The result of that operation necessarily limits the movement of his back so that there is but slight movement in the 12 vertebrae comprising the thoracic or dorsal region. If any further surgery is to be done it will be in the nature of a lumbosacral fusion which would render his entire back practically immobile.

This cause was heard by a referee for the commission in 1936. His findings were that an employe-employer relationship existed between relator and his sister, Mrs. Umbehocker; that she carried compensation insurance at the time of the accident, April 27, 1933; that on said mentioned date relator suffered an accidental injury to his person arising out of and in the course of his employment; that both employer and insurer had notice thereof within the statutory period; that the disability resulting from the accident "did not extend beyond the waiting period"; and, lastly (finding No. 6) "that the employe requires further medical care and attention in order to cure and relieve from said injury." The conclusion reached was that relator should have and receive, at the expense of respondents,

"such further medical care and attention as may be reasonably required in order to cure and relieve" him from the mentioned injury. Both parties were dissatisfied with the referee's findings, hence both appealed to the commission. There the findings were affirmed except the last quoted finding (No. 6). In lieu of that finding, which the commission set aside, it substituted its own, reading as follows: "That at the time of said hearing said employe was suffering from a condition of disability of his back and that said condition of disability was not due to nor aggravated by, nor in any way attributable to said accidental injury sustained by him on April 27, 1933." It was therefore concluded and so ordered "that the claim petition of said Walter E. Hill * * * should be, and the same hereby is, in all things disallowed."

Relator urges that "the evidence does not warrant or support the findings that relator did not sustain disability as a result of said accident beyond the waiting period and that relator's disability at the time of the hearing was not attributable to the accidental injury sustained on April 27, 1933, but as a matter of law compels a finding that as a direct result of said accidental injury of April 27, 1933, relator sustained injuries resulting in permanent partial disability."

If relator is right respecting his quoted claim, it necessarily follows that the order should be reversed. We are therefore required to direct our attention to the record to ascertain whether relator's claim is well founded.

■ It is well to bear in mind that "it is for the triers of fact to choose not only between conflicting evidence but also between opposed inferences. * * * It is only where the inference upon which the challenged finding rests is not itself reasonably supported or where it is clear that the whole evidence is in manifest and undeniable preponderance against it (even though there is some support for it in the evidence) that there should be a reversal." Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 442, 215 N. W. 678, 679. (See cases cited p. 442.) That rule we have so consistently followed that citation of cases is deemed unnecessary.

■ In the chain of causation between the accident and the resulting injury medical testimony forms a very important part, in many cases the convincing part. If there is evidence in the record reasonably sustaining the conclusion reached by the commission we have no business to interfere.

Dr. Dunn, a duly qualified surgeon, testified that in view of the history of the case he was of opinion that "carrying the ice was a mere trivial incident which caused three days' disability and did no permanent damage to his back and does not account for the present condition of his back." He ascribes relator's symptoms to a so-called "butterfly process," shown by X-ray pictures to be located on the left side of his fifth lumbar vertebra in such a manner as to articulate the sacrum. This is a congenital condition and is unrelated to the accident. And there is other expert testimony that "old unreduced compression fractures often result some years later in producing pain and disability." Not to be overlooked is the fact that Dr. Dodds, who performed the fusion operation in 1935, did so, not because of any injury occurring in 1933, but because relator had an "unreduced compression fracture" of the lumbar vertebra resulting from the 1923 accident. As a result of that operation the strains and stresses from normal activity were transferred from the usual place by this fusion of the lumbosacral area, thereby placing additional stress upon that area, which in turn causes the symptoms complained of.

Further discussion is not deemed helpful to the parties or the profession. All that can or need be said is that the record presented fact issues only, and as such they were for the triers thereof to determine. They have well discharged that duty, and we find no reason for disturbing the result.

Writ discharged and order affirmed.