JOHN HENZ v. ARMOUR & COMPANY.[1]

February 11, 1938.

No. 31,529.

*Charles H. Winter,* for relator.
*G. P. Mahoney,* for respondent.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to the industrial commission to review its order affirming the findings of fact and order of disallowance of compensation of its referee.

Relator was injured as the result of a fall on Saturday, January 2, 1932, while in the course of his employment by respondent, a self-insurer. The latter paid relator compensation from January 8, 1932, to August 10 of that year. May 1, 1934, relator instituted proceedings to recover compensation for the intervening period and for the duration of the disabilities he claims. The referee found

[1]Reported in 277 N. W. 923.

that by the date compensation was discontinued relator had recovered from any and all effects of the accidental injury, that at the time of the accident relator was suffering from chronic Perthes' disease, and that this was the cause of any disability existing after August 10, 1932.

The accident occurred late Saturday afternoon when relator was at work on the killing floor of respondent's South St. Paul plant. Relator slipped on the greasy floor while pushing beef carcasses suspended from an overhead track. He fell, with legs spread apart, on to his right hip and the lower part of his back. After a minute or so he picked himself up and worked a few minutes longer. He then sought the company physician, but he had left his office. Sunday and Monday the plant was closed. On Tuesday relator was examined by the company doctor, who, finding no swelling or discoloration of the parts of the hip and back where relator complained of pain, told him to go back to work. Relator continued at his employment, which consisted of heavy manual labor, until Friday morning, when he was again examined by the company physician. At this time it was found that relator was suffering from a limitation of motion of his right leg, and an X-ray revealed that the head of the femur in the right hip was flattened. Relator remained in the company infirmary a few days and was then sent home. He was thereafter examined and treated by three or four doctors of his own choosing, but his condition was not improved. Respondent caused him to be examined by an orthopedic specialist, who recommended hospitalization. In accordance with this recommendation, he was kept in a hospital bed for two weeks in April where his right leg was extended by traction. During the succeeding period prior to discontinuance of compensation, respondent caused massage and heat treatments to be administered to him and several teeth to be extracted, but relator asserts that no improvements in his physical condition resulted.

Relator complains that he has suffered pain in his right hip and the lower right side of his back ever since his fall, that the freedom of motion of his right leg has been greatly limited, and that as a result he is unable to perform manual labor. He predicates

his right to recover upon the theory that the existing condition caused by Perthes' disease was aggravated by the accident and that this is the cause of disability. He contends that the findings of fact of the referee are not warranted by the evidence or justified in law.

Perthes' disease has been recognized only within comparatively recent years. It has its genesis in childhood while the femur is in a formative state. Whether it results from infection or from trauma is disputed; but its effect, whatever the cause, is the flattening of the head and the broadening of the neck of the femur. Since the head of the femur thereby becomes maladjusted to the socket into which it is supposed to fit, it is obvious that some limitation of the normal movement of the leg must result. After the initial flattening and broadening of the femur occurs, the condition may remain quiescent for many years, but during adult life it has been noted in some cases that chronic or degenerative arthritis later develops. In its more advanced state it is accompanied by pain, muscle spasm in the vicinity of the affected bone, and considerable limitation of movement of the leg. It may originate without the knowledge of the afflicted person; its resurgent activity after a period of quiescence has been said to be due to traumatism caused by the overuse of a mechanically imperfect joint. It can be discovered only by the use of X-rays. It is apparent that most of the medical theory concerning its commencement and its progress finds its basis in speculation and that the reasons for its origin and for its renewed activity in later life are not at present known to the medical profession. Fraser, Trauma Disease Compensation, p. 321; Gray, Attorneys' Textbook of Medicine, p. 301, et seq.

It is conceded by relator that the flattened and broadened condition of the femur existed at the time of the accident. Relator was then about 43 years of age and had been employed at heavy manual labor all his life. He had never been sick and could remember no accident which might have caused Perthes' disease during his youth. He claimed that this accident aggravated the condition of his femur which had remained quiescent since adolescence, and that since that time he has suffered pain, muscle spasm in the

area of his right hip, that he has been unable to stand on his feet for any considerable period since then, that the movement of his leg is limited and a limp has developed through the shortening of the right leg, and that there has been atrophy of the muscles of his right thigh. The physicians of his selection who examined and treated him following the accident testify to this effect.

The physicians called by respondent and the neutral physicians appointed by the industrial commission categorically deny the truth of all of these assertions. They assert that the X-rays taken soon after the accident when compared with X-rays taken in the summer of 1934 fail to show the slightest change in the abnormal condition of the femur so that there is no justification for an assumption that the condition of the femur differs in the slightest from its condition at the time of the fall. They maintain that the accident imposed a strain on the soft parts of the body on which he fell without affecting the femur, and that the period for which compensation was paid was ample to permit a recovery from those strains to the soft tissue. They profess that they are unable to find any anatomical or physical abnormality which would give rise to the complaints relator alleges. They admit that the condition of the femur would impose some limitation upon the movement of the leg, but contend that this limitation is not now any more extensive than it was when the accident happened. Some of them, including the neutral physicians, are of the belief that the difficulties relator protests he has are due to his conscious or subconscious desire for them because of the benefits he would receive.

Since the cause of relator's alleged disabilities must be based in large part upon supposition and since the symptoms indicating their presence are almost wholly subjective, a decision for relator must be based upon the honesty and integrity of his story, and its truth or untruth cannot be conclusively demonstrated. The referee was the person most competent to adjudge that matter.

The findings of fact of the commission will not be disturbed unless the evidence clearly requires a contrary conclusion. Bronson v. National B. B. Co. Inc. 200 Minn. 237, 273 N. W. 681; Gorman v. Grinnell Co. Inc. 200 Minn. 122, 273 N. W. 694; Campbell v. Nel-

son, 175 Minn. 51, 220 N. W. 401; 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 10426. In the haze of conjecture surrounding this case but one thing can be clearly discerned, and that is that the finding of the commission cannot be said to be erroneous as a matter of law.

Writ discharged and order affirmed.