PETER UTGARD v. HJALMAR HELMERSON AND ANOTHER.[1]

May 13, 1938.

No. 31,661.

*Louisell & Louisell,* for relator.
*Hunt & Palmer,* for respondents.

JULIUS J. OLSON, JUSTICE.

Petitioner-relator, being dissatisfied with the findings and award of compensation made by the industrial commission, brings his case before us for review by means of *certiorari.*

In a memorandum opinion the commission has lucidly and accurately set forth the essential facts, which may be summarized thus: On June 9, 1936, and for some time prior thereto, relator had been employed by respondent-employer under a Minnesota contract of hire as a pieceworker at a weekly wage of $28.12. The employer was protected by liability insurance. The case was heard by a referee of the commission, who found that relator had sustained an earlier injury in the same employment on June 6, and that the em-

[1] Reported in 279 N. W. 748.

ployer had due notice of both injuries within the statutory period. The employer and his insurer appealed to the commission, where certain findings were modified, resulting in the granting of less relief than had been found and ordered by the referee. As thus amended the findings are that relator suffered no injury on June 6, likewise that no notice of any such injury was given to the employer or his insurer within the statutory period. The commission however did find that on June 9, while in the act of piling pulpwood which relator had already felled and cut into proper lengths, he twisted his ankle. There were no fractures or dislocations. His pain was intense and necessitated discontinuance of his work. He hobbled back to camp a short distance away. There was no physician immediately available so he was taken to Dr. Tate, the medical officer in charge of a CCC camp located nearby. By him relator was treated from the 12th to the 19th of June. The treatments consisted of medication, massage, and taping. On the 19th he was transferred to a hospital at Two Harbors, where he was placed under the care of Doctors Burns and Christensen. There he remained and was treated from June 19 until August 26. During the early part of his treatment his condition improved, but later and during his period of hospitalization a condition of multiple neuritis developed, which the doctors thought was wholly unrelated to the injury. On August 26 relator was transferred to a hospital at Duluth and placed under the care of Dr. Kuth. Ever since then and until the time of the hearing relator has been treated by many other physicians.

The testimony of 10 physicians was taken and is in the record. Naturally, there is some difference of opinion amongst them; but the commission concluded and so found that relator's condition was in no manner caused by the twisting of the ankle on June 9. There is testimony that some of the doctors thought that if the accident claimed to have occurred on June 6 actually resulted in injury to the peroneal nerve where it passes over the outer aspect of the left leg below the knee there would be adequate causal connection between such injury and the resulting condition of neuritis. There is other medical testimony amply sustaining the opposite

view; also that the present condition of the leg indicates other nerves are involved, nerves that could not be affected by the claimed injuries on either June 6 or 9.

With regard to the claim of injury on June 6 something should be said. Relator testified that while he was in the act of felling a tall tree the butt thereof swung around as the tree fell, striking him immediately below his left knee, knocking him down; that he was obliged to quit work about three o'clock that afternoon; that upon examination by him the leg showed black and blue marks; and that the leg became increasingly more sore and painful the next several days. He claimed there was a numbness in the leg and that he had to use crutches to go from his camp into the forest where his work was being done and that he continued using these crutches until the later injury on June 9. It is interesting to note, in support of the conclusion reached by the commission, that relator when he saw Dr. Tate from June 12 to 19 said nothing about any injury on June 6. The same is true respecting the time that he was under the care of Doctors Burns and Christensen, from June 19 to August 26. When he was placed in the care of Dr. Kuth on August 26, and treated by him thereafter, nothing whatever was said about any injury on June 6. Also important, on July 2, 1936, relator while still in the hospital in Two Harbors gave a very complete statement to an investigator for the insurance carrier in which he referred to the twisting of his ankle on June 9 as the only cause of his injury. No reference was made to the very severe injury which he later claimed occurred three days earlier. As a matter of fact, relator's first mention of the June 6 injury was contained in a statement or history given by him to Dr. Dunn, who examined him for the insurer on November 13, 1936. A few days later, November 18, while at the Duluth hospital, more than 90 days after the accident, relator referred to the June 6 injury. He then claimed he reported the accident of June 6 to his employer and to the doctor, but this is denied, so that matter obviously presented a fact issue. Perhaps we should also mention that in an exhibit used in petitioner's behalf, same being a blank form or specimen copy of an accident policy, there is a provision reading as follows: "No indemnity will

be paid under any circumstances for more than one of the specific losses for which provision is made in Parts One to Five." Relator claims that at one time he had such a policy and that he "knew very well" that he could not "draw compensation for more than one hurt" and for that reason only claimed compensation for the ankle injury because that was what caused him "the most pain." For the reasons mentioned and upon conflicting medical testimony, the commission concluded that relator did not sustain any injury on June 6, and further that no such injury was reported to the employer or insurer within the time required by law.

The important medical testimony upon which the commission's finding is based is that relator's condition in respect of multiple neuritis developed after his entry into the hospital of Doctors Burns and Christensen, and that this condition is wholly unrelated to the ankle injury sustained on June 9. So the conclusion reached by the commission was that there is no causal connection between the accident sustained while in the employment of respondent and relator's present ailment, hence that his right of recovery was limited to the healing period caused by the wrenching of the ankle on June 9, and for this injury and expense connected with medical treatment, hospitalization, and weekly benefits allowance was made.

The decisive findings challenged by relator are: (1) That he "did not sustain any accidental injury to his person" on June 6, 1936; (2) that "employer and insurer did not obtain knowledge or notice within the period required by law of any accidental injury now alleged by said employe to have been sustained by him" on the mentioned date; and (3) that he now suffers a condition of multiple neuritis but that this condition "was not caused by, nor aggravated by, or in any way attributable to any accidental injury sustained by" him in said employment.

Relator stoutly maintains that these findings are "palpably, manifestly, clearly and conclusively contrary to the evidence," hence cannot be sustained. He asserts that the referee having found for relator, we should heed the result reached by him rather than that of the commission; that this must be so because the referee "could not possibly find otherwise than he did without stifling his conscience."

Respecting the last finding of the commission, relator characterizes this as "mere sham, and does not amount really to a scintilla of evidence."

■ The rules governing us as a court of review are well known. "The findings of fact of the commission will not be disturbed unless the evidence clearly requires a contrary conclusion." Henz v. Armour & Co. 202 Minn. 213, 216, 277 N. W. 923, 925. The triers of fact must choose "not only between conflicting evidence but also between opposed inferences." Nor is this a case where from the whole evidence it is manifest that there is an "undeniable preponderance against" the finding. Hill v. Umbehocker, 201 Minn. 569, 572, 277 N. W. 9, 10. "Where the evidence is conflicting, it is the duty of the triers thereof to determine the facts; and on appeal it is the duty of the court to view the evidence in the light most favorable to the party whose claims" the triers of fact believe. Ranwick v. Nunan, 202 Minn. 415, 278 N. W. 589, 590.

■ The facts have been related. Repetition thereof is unnecessary. Reviewing the record in the light of the rules stated in the preceding paragraph, we can come to no other conclusion than that each of the findings mentioned is well sustained; not only are they sustained, but we think it would be extremely difficult to sustain any opposed thereto. Of course if any of the mentioned findings is sustained relator's cause must fail.

Writ discharged and order affirmed.

MR. JUSTICE STONE, absent because of illness, took no part in the consideration or decision of this case.