MARY SUSNIK v. OLIVER IRON MINING COMPANY.[1]

May 19, 1939.

No. 31,982.

[1]Reported in 286 N. W. 249.

*Dennis F. Donovan,* for relator.
*Nelson & Cedergren,* for respondent.

STONE, JUSTICE.

*Certiorari* to the industrial commission to review an award of compensation for death.

Mr. Frank Susnik departed this life October 10, 1934. The one question is whether there is evidence reasonably supporting the finding of the industrial commission (Commissioner Debel dissenting) that an injury suffered nearly four years earlier, December 19, 1930, was so much a contributing cause of death as to entitle petitioner, the widow of Mr. Susnik, and three dependent children to compensation.

For many years Susnik had been a miner, rather steadily employed on the iron ranges of northern Minnesota. At the time of his accident he was working underground for relator, the Oliver Iron Mining Company. It conceded temporary total disability and paid compensation and medical expenses for a few weeks. Much later Susnik claimed permanent disability. With that claim relator took issue. The industrial commission allowed it, and their decision was affirmed in Susnik v. Oliver I. Min. Co. 193 Minn. 129, 258 N. W. 23. While that case was pending here Susnik died. As our decision shows, there was a motion to remand for a further hearing, to include the findings on the autopsy. Our denial of that motion implied no consideration at all of the new evidence furnished by the autopsy.

At the hearing of his own claim Susnik drew a rather serious picture of the accident and its immediate results. His claim was that a quantity of ore fell on him from the breast of the drift on which he was working and severely injured the left side of his chest. There was a fracture, without separation of the bones, of the fibula of his left leg. His counsel would now have us believe that there

was also a fracture of one, if not three, ribs on the left side, so serious as to puncture the lung and explain as cause much that followed.

What followed may be briefly stated thus. After treatment for about four weeks and a healing of the fracture of the fibula, Susnik tried to resume his work as a miner but could not do so then or thereafter. Several times he made the effort. Later on he was employed as watchman in a city park. That involved little physical· exertion. Anyway, owing to the need of others for remunerative employment, he worked only half time.

The clinical history is that of a man who after the accident was increasingly incapacitated for manual, and finally for any, labor. The immediate cause of death (as disclosed by the autopsy) was found in a badly enlarged and otherwise damaged heart.

At the hearing before the industrial commission on Susnik's claim for compensation, the issue was altogether medical. The employer did not traverse Susnik's version of the accident itself. One part of this record presents a very different picture. At the hearing on this claim the employer produced as witnesses Susnik's partner at the time, one Intihar, and also two foremen or superintendents. Intihar and Susnik were contract miners, working together. Intihar's circumstantial statement is that no ore fell on Susnik, but all that happened was that Susnik, in stepping back from the breast of ore on which he was working, fell over a large chunk; that he got up without the assistance offered by Intihar; and that after a little rest he went on with his work, and, although the accident happened before midnight, stayed on the job until quitting time at five a. m. That until then Susnik did not leave the mine is conceded. It is denied that he exerted himself very much between the time of the accident and quitting time. Leaving the place, or "contract," Susnik and Intihar had to descend 84 feet of almost vertical ladders and walk just about half a mile to the cage, or elevator, which took them to the surface. Above ground they walked a short distance to the "dry" or change house. From there Susnik traveled several miles by bus to his home. Later on in the

morning he first reported for treatment to Dr. Kotchevar, the employer's physician.

The present issue, whether Susnik's accident contributed appreciably and substantially to his death nearly four years later, has required our consideration of the large volume of testimony, which conflicting notions of the doctors (there were only 18 of them) leave in a mass of irreconcilable contradiction. With the aid of a medical dictionary, we have striven to understand not only the views of each of them, but the factual basis assigned by each for his conclusion. The result is that separate treatment is required for every hypothesis assigned by counsel for petitioner in support of the affirmative finding. That decision is thus explained in the brief for petitioner:

"The commission essentially found that Susnik began to die when the ore fell on his body and broke the ribs on his left side."

If the decision of the commission had as its sole basis the assumption that Susnik suffered serious and disabling fracture of "the ribs on his left side," it is demonstrably wrong because without foundation in any reasonable view of all the evidence.

It is significant that when Susnik reported for treatment the morning after the accident he gave no history of anything indicating rib fracture. He did claim a little soreness in the left chest. Because of that, Dr. Kotchevar applied straps of adhesive tape. He made a careful examination for rib fracture, but found none. Neither was there objective evidence of any bruising of the chest. The doctors are unanimous in saying that if there had been any serious rib fracture it would have produced an immediate sharply painful breathing, and that if the lung had been seriously damaged there would have been evidence of pneumothorax and expectoration of blood. Their view of that phase negatives reasonable probability that Susnik, with the kind of rib and chest injury now diagnosed by his counsel, would have continued on the job from well before midnight until five a. m. and then, unaided, gone down the ladders and over the half mile necessary to get him out of the mine and on his way home. After that came the bus travel and

the examination by Dr. Kotchevar. Then, for more than a fortnight Susnik walked with crutches. Whatever rib or chest injury there was evidenced no pain or other inconvenience from use of the crutches. The whole makes a mass of evidence upon which it is not only possible but imperative to say, as the judicial view, that no fracture of the ribs, at least such as would contribute to the pathology which followed, is established by the record.

We do not overlook that the autopsy disclosed evidence of the fracture of the tenth rib on the left side. Neither do we forget that Susnik's history, as given by himself, is negative as to past chest injury. The autopsy showed marked adhesions of the left lung to the pleural wall. The argument for claimant is that they may have been caused by the rib fracture. That conclusion is not sustainable on the medical testimony, and the fact that the right lung, with no indication of trauma, showed more of adhesion than the left.

Another hypothesis for claimant (which played a major part in the earlier case here) was that Susnik, at the time of the accident, was in a serious stage of pneumoconiosis or silicosis (the former includes the latter as a matter of medical terminology), which was so aggravated by the accident as to make it a legal cause of the death which came much later.

There was such an ante-mortem diagnosis based largely upon X-rays. But it was shown to be erroneous by the post-mortem evidence. Pneumoconiosis was negatived. There was an unimportant condition of anthracosis, unimportant because clearly not a contributing cause of death. The condition found in that respect was just such as is known to exist in the lungs of many, if not most, adults whose misfortune it is to spend too much of their lives in the smoke and dust-laden atmosphere of many of our cities.

Examination of the lung tissue under a polarizing microscope showed some "refractile particles." That again is a condition frequently, if not normally, present in the lungs of people exposed to dust-laden atmosphere. It cannot seriously be claimed to indicate for this case a diagnosis of pneumoconiosis in any stage making it an important factor for present consideration.

The argument for claimant supposes a pathology of the lungs as cause and explanation of the admittedly badly diseased and fatal condition of the heart. But facts disclosed by medical testimony (as distinguished from some of the conjectures based thereon) satisfy us that if Susnik's troubles began in the lungs, with a condition of pneumoconiosis or congestion or anything else interfering with pulmonary circulation, the heart enlargement would have begun, and probably continued, more pronounced on the right rather than on the left side. That is because it is the right side of the heart that pumps the blood into the lungs. Any obstruction in the latter, therefore (and here the doctors manifested one of their too infrequent agreements) will cause enlargement of the heart to begin, and normally remain more pronounced, on the right rather than the left side. But Susnik's heart, at the end twice the normal size, showed that its greater difficulty had been on the left side rather than on the right. The enlargement had begun there. It is the left side that takes the blood from the lungs and pumps it through arteries, capillaries, and veins back to the right side, whence it is again forwarded to the lungs for oxygenation.

The two hypotheses thus dealt with we reject as being too conjectural to be accepted in place of real inference.

But there remains another which has enough support of reasonable inference to prevent our reversal. Details of the heart condition disclosed at the autopsy need not be gone into. It is enough that it was bad and the immediate cause of death. It had been developing for years, with a beginning probably before Susnik's accident. Even then, it is easy to conclude, it had gotten into a serious stage. The heart condition, even though primary, would almost surely induce a disease of the lungs and explain most of the pathological and more serious conditions found in them after death. That may explain why Susnik some time after the accident developed a case of what one doctor then diagnosed as pleurisy. It may explain the cough and other of Susnik's symptoms, present after the accident, but never before so far as indicated by evidence.

That the accident brought on a disability, almost if not quite continuous and progressive, is a conclusion reasonably to be drawn.

Although he seems to have tried earnestly to resume work as a miner, Susnik could not do it.

Was the accident a contributing cause, that is, an appreciable or substantial factor (see Green, *Rationale of Proximate Cause*, p. 135) and so a "legal cause" of the death? The doctors have a convenient term for what the majority of the commission may have thought the answer. Compensation, in the terminology of medicine, is "the act of making good a deficiency; the state of counterbalancing a functional or structural defect." Gould's Medical Dictionary (3 ed.). If it was considered by a majority of the commission (and of that we cannot be sure) that until the accident and notwithstanding the heart and lung condition there had been compensation in the functions of Susnik's vital organs, which by the accident was reversed and put on the road to decompensation in such fashion that the accident was a substantial factor in the death, we are unable to say that the decision should be disturbed. The margin of evidence in its support is narrow, but enough.

■ For us this has been essentially a fact case, with the usual terminal question of law, whether the evidence has such substance as to support the inference or deduction implicit in and necessary to sustain the affirmative conclusion. In denying validity 'for the two hypotheses for claimant, we have applied to opinion testimony, on which they were based, the simple rule that an affirmative finding cannot be sustained upon mere conjecture, as distinguished from real deduction. This rule applies to opinion evidence, even that of the best of experts. Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852. It governs in weighing all evidence and its analysis for purposes of decision.

■ The referee ruled that the record of the hearing on Susnik's claim for disability compensation should be considered in evidence for all purposes. That was entirely proper under the rule of Nyberg v. Little Falls Black Granite Co. 202 Minn. 86, 277 N. W. 536. The point is this. The claim of the workman for disability compensation is one thing. If as a result of the accident he dies, the resulting claim of his widow is quite another. The claims are in-

dependent except for some (by no means all) of a common factual foundation. The latter portion which asserts the right of dependents is but a continuation of the earlier part on behalf of the workman since deceased.

That is settled by the Nyberg case and needs no further comment except this. Where the earlier record is used in the subsequent hearing on the death claim, care must be taken by referee and commission to consider only that part which is relevant to the new issue of causation raised by the claim for compensation for death. The latter makes an issue which will frequently be quite distinct in determinative factors from the one settled by decision on the claim of the employe himself. It should be stressed that what we said in the earlier case, especially our refusal to remand after his death, applied only to the claim of Susnik himself. It then had no effect and can have none now on the claim of his widow, except whatever relevance it has as argument. It cannot go further than that.

From what appears from this record, we feel that the referee for a long time at least entertained some notion that the decision in the earlier case had some binding effect. It does not appear how much. He referred to "the issues already determined in this matter, the determination by myself and confirmed by the Commission and the Supreme Court." We are not sure from the memorandum explaining the decision of the commission how far they felt themselves bound by the earlier case. Moreover, we have been constrained to reject two of the three theories urged for claimant. All through the hearing they were much stressed in the examination of witnesses. So, while we affirm, it is done without prejudice to a reconsideration of the whole case, on the present record, by the commission, if it so orders. Subject to that, the order must be affirmed with an allowance to respondent here of $100 for attorney's fees.

So ordered.

Mr. Justice Hilton, being incapacitated by illness, took no part.