## RAY HUSNICK v. SEEGER REFRIGERATOR COMPANY AND ANOTHER.[1]

November 3, 1939.

No. 32,138.

*Louis F. Soukup,* for relator.

*Reynolds & McLeod,* for respondents.

GALLAGHER, CHIEF JUSTICE.

*Certiorari* to review an order of the industrial commission denying relator's claim for benefits under the workmen's compensation act.

On December 20, 1935, and for some time prior thereto, relator was employed as a helper by Seeger Refrigerator Company in its plant in St. Paul. It is his claim that on that day, while assisting other employes in changing dies on a machine, a die suddenly went off balance causing its great weight to fall on his left hand in such position as to push the fingers and thumb backward in a hyperextended position and resulting in permanent disability to the thumb. A short time after the accident relator reported to the plant nurse and advised her that he had injured his left wrist. The nurse taped the wrist. Employe admits that

[1]Reported in 288 N. W. 389.

he did not say anything to the nurse about the thumb at the time but claims that he called her attention to it on a visit a few days later and that she sent him to Dr. Heck, the company doctor, on December 31, 1935. The doctor, after making an examination, told employe that a cord or ligament had been injured and recommended operative treatment. This employe declined at the time but indicated that he would have the operation performed at a later date. He did not return to Dr. Heck until after a subsequent injury in June, 1937, but at the request of the insurer reported to Dr. Bell for examination on February 21, 1936. At that time the only apparent trouble with the thumb was that "it wouldn't open all of the way." The doctor told him that it would not thereafter bother him, and we do not find any testimony in the record to the effect that it did.

On June 14, 1937, while working for the same employer, relator dropped a 300-pound die on his left hand, fracturing the thumb and making it necessary to carry the hand in a splint for about six weeks. He subsequently filed two claim petitions and asked for benefits under the compensation act for each injury. The referee made an allowance as to the second injury but found as to the first that "the employe herein did not sustain an accidental injury arising out of and in the course of his employment" on the date claimed and further found "that as a result of a diseased condition, the employe has sustained a disability of the left thumb amounting to approximately 15 per cent of the loss of use thereof, which disability was neither caused nor aggravated by accidental injury arising out of or in the course of his employment."

On appeal the commission affirmed the decision of the referee, and this review is of the commission's decision. The order pertaining to the injury sustained on June 14, 1937, is not involved herein.

The case presents only one question, and that is whether the evidence sustains the findings of the commission affirming those of the referee to the effect that employe did not sustain an acci-

dental injury arising out of his employment at the time claimed and that the disability from which he was suffering was the result of a diseased condition and was neither caused nor aggravated by the accident of December 20, 1935.

The medical testimony presented by employe is that of Dr. Pedersen, who examined him on November 27, 1937, presumably for the purpose of qualifying as a witness. The record does not disclose that the doctor treated employe or saw him more than on the one occasion. Dr. Pedersen found that relator had an injury to the extensor tendon of the left thumb and that he was unable to extend the thumb beyond 45 degrees. He also found some atrophy. He was of the opinion that the disability was permanent and placed its extent at 33 1/3 per cent, but was unable definitely to state as to whether it was caused by the first or second accident. He testified, however, that he believed it was probably due to the second accident. On cross-examination Dr. Pedersen admitted that weight on the hand with the palm turned up as described by employe would not be liable to injure the extensor tendon of the thumb unless there was a counteracting muscular pull on it. There was no testimony in the record which compelled a determination that there was a counteracting muscular pull or any that would warrant such a determination unless it was based on conjecture.

Doctors Heck and Bell, testifying for respondents, were each of the opinion that the tendon could not have been ruptured in the manner described by employe in his testimony and in giving to them a history of the accident. Dr. Heck saw the hand after the first injury and treated it after the accident of June 14, 1937, and was probably in a better position than anyone else to determine the effect of each injury. Stress is laid by counsel for relator on a statement by Dr. Heck to the effect that if the thumb had been in a hyperextended position and someone suddenly hyperflexed it, there was a possibility that the tendon could have been ruptured in that manner. The doctor added, however, that there was no history of that character present.

At most, employe was unable to tell just how the occurrence of December 20 came about.

In this case, as in many others, we are confronted with the rule that it is for the triers of fact to choose not only between conflicting evidence but also between opposed inferences. There is really not much conflict in the evidence of the medical experts. The commission was not required to speculate as to how the injury occurred and was justified in accepting the testimony of respondents' doctors that the condition of the thumb was not the result of accident.

The decision of the commission is affirmed and the writ discharged.

Mr. Justice Peterson took no part in the consideration or decision of this case.