HARRY L. SCHMILLEN v. DAVE SCHROEDER GROCERY
AND ANOTHER.

85 N. W. (2d) 740.

November 1, 1957—No. 37,134.

*W. E. Hottinger,* for relator.
*C. A. Stark,* for respondents.

NELSON, JUSTICE.

Certiorari upon the relation of Harry L. Schmillen, employee, to review an order of the Industrial Commission reversing findings of the referee awarding compensation to relator against Dave Schroeder Grocery or Dave Schroeder & Son Grocery, employer, and United States Fidelity & Guaranty Company, insurer.

Employee was born in 1905 in St. James, Minnesota. In 1912 he contracted osteomyelitis of the right leg. An operation was performed in the same year at the Mayo Clinic at Rochester, Minnesota, and treatments for osteomyelitis of the right femur continued until April 1918. From 1918 until 1923 employee had no further difficulty

and in the early part of 1923 secured employment with the employer at St. James as a delivery boy.

On May 2, 1923, employee suffered an accident. He testified that he was carrying boxes of canned goods when one of these boxes slipped out of his hands and struck his right leg inside of the knee. Dave Schroeder, who testified on behalf of the employer, had a different version of the accident and stated that employee was carrying a box of garbage when he dropped the box on his knee. Testimony indicated that the accident resulted in skin being brushed off on the inside of the right knee. Several days after the alleged accident employee consulted a local doctor by the name of Dr. O. H. Turnstrom who treated his leg. On May 16, 1923, employee went to the Mayo Clinic where he was again operated upon for osteomyelitis of the right femur. The record does not disclose any scar or abscess caused by the injury to the inside of the right leg. Treatments continued at the Mayo Clinic until March 24, 1924. Employee was then fitted with a Thomas brace and was released from the clinic and did not return until December 21, 1953. It is apparent from the record that the operation performed and the treatments received at the Mayo Clinic between May 16, 1923, and March 24, 1924, were due to a condition of chronic osteomyelitis in the thigh bone of the right leg. The operation was performed on the outside of the right leg and not on the inner side where it is claimed the skin was brushed off in the accident.

In April 1927 employee consulted Dr. Roscoe C. Webb of Minneapolis. He was taken to Asbury Hospital in Minneapolis and Dr. Webb removed some spicules of bone from the outer side of the right leg where operations had previously been performed at the Mayo Clinic. Employee was discharged from Asbury Hospital on April 29, 1927. Dr. Webb testified that the abscesses had cleared up and the operation wound had entirely healed. As before, no abscesses were found at the point on the inside of the right leg where employee claimed the skin had been brushed off due to the accident. Employee had no further difficulty from April 1927 until July 1931.

There is scant if any mention made in clinical or hospital records of employee's having been injured in an accident occurring May 2, 1923. Dr. Webb received no such history and he was of the opinion

that the pieces of bone that had worked out through the skin when the employee was under his care at Asbury Hospital resulted from chronic osteomyelitis and that it was neither injury connected nor due to traumatic aggravation. There was testimony that employer-insurer had paid to the employee compensation at the rate of $10 per week for 300 weeks of temporary total disability and that employee's hospital and medical expenses had been paid up to and covering the period employee was under the care of Dr. Webb.

The referee found that as a result of an accidental injury arising out of and in the course of his employment employee had become temporarily totally disabled on May 6, 1923, and continued to be so disabled for the 300-week period following. He also found that by reason of said injury employee became permanently and totally disabled from July 28, 1953, up to and including the last hearing, but the referee did not find that the condition complained of at the hearing was due to an aggravation of an existing osteomyelitis condition.

On appeal the Industrial Commission determined that the osteomyelitis which caused the disability was unrelated to the accident of May 2, 1923, either by way of causation or aggravation and vacated the referee's awards for compensation. The commission determined that any disability employee may have sustained after April 1927 was the result of chronic osteomyelitis and specifically rejected employee's theory that his present disability was the result of an aggravation of his osteomyelitis condition.

The employee called as his medical expert Dr. Edward D. Henderson, an orthopedic surgeon at the Mayo Clinic. Dr. Henderson testified that the records at the Mayo Clinic indicated that his father had treated employee for chronic osteomyelitis prior to 1923 and again following May 2, 1923, and in 1924. He testified that he had operated on employee when he returned to the Mayo Clinic for further treatment in 1954. Dr. Henderson testified that in his opinion employee had what is termed an arrested osteomyelitis of the right femur which apparently had not given him any trouble from 1918 until the accident of May 2, 1923, and since the time of the accident he suffered from chronic osteomyelitis which continued to advance, causing additional disability. Basing his opinion on facts placed before the referee

and certain hypothetical questions propounded to him, he testified that the alleged accident was a competent producing cause of the employee's present condition through the aggravation of a previously existing condition. However, Dr. Henderson was asked on cross-examination whether it would change his opinion if it should appear from the testimony that during the period from April 1927, when employee was discharged from Asbury Hospital in Minneapolis, until July 1931 employee had no flareups and no draining sinus. His answer to that question was that it would and that if the condition complained of was actually dormant for an intervening period of four years his opinion would not be as previously stated in answer to the hypothetical question. The hypothetical question put to Dr. Henderson included as a fact the continuous draining of employee's right leg following May 2, 1923. Dr. Henderson stated that, if there had not been continuous draining since 1923, but that a lapse had occurred from April 1927 to July 1931, then he would have no opinion.

Dr. Webb testified that he was given no history of an accident of any kind. He definitely stated that in his opinion, which he based upon the examinations he had made and the operation he had performed, as well as the testimony presented at the hearing, employee's condition had no connection with trauma and that the conditions disclosed while under his care at Asbury Hospital had no connection with the accident either by way of aggravation or other cause. Dr. Webb stated that in his opinion any flareup which might arise due to the accident would in the case of chronic osteomyelitis be only temporary and that such flareup, if there had been an aggravation due to the accident, had disappeared entirely prior to the time he treated him at Asbury Hospital in 1927. It was his opinion that the condition of employee's right femur in 1927 was not related to any accident such as described by the employee; that the condition of the right femur was the result of the natural history of chronic osteomyelitis.

Employee called several local doctors to whom he had gone for treatment over the years, but this testimony was unimportant except that it indicated a continuation of chronic osteomyelitis over the period from 1931 to 1953 after Dr. Webb had taken charge of the employee's case at Asbury Hospital.

■ The controlling expert medical testimony regarding the progress of the disease of chronic osteomyelitis here involved was furnished by Dr. Henderson and Dr. Webb, both of whom had operated on employee's right femur. No one questioned their qualifications as medical experts. In some respects their testimony was in agreement and in other respects clearly in conflict. This medical testimony when taken as a whole raised important fact issues concerning employee's physical condition and its relation to the disease known as chronic osteomyelitis.

■ The burden of proof was upon the employee to prove his claim by competent testimony. We have held repeatedly in workmen's compensation cases that conflicts in medical opinion must be resolved by the triers of fact. We think the conflict in the instant case raises a fact issue concerning employee's physical condition and its cause, which was for decision by the Industrial Commission. Swanson v. American Hoist & Derrick Co. 214 Minn. 323, 8 N. W. (2d) 24; Saari v. Dunwoody Iron Min. Co. 221 Minn. 95, 21 N. W. (2d) 94; Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 878; Husnick v. Seeger Refrigerator Co. 206 Minn. 210, 288 N. W. 389; Susnik v. Oliver Iron Min. Co. 205 Minn. 325, 286 N. W. 249; Gorman v. Grinnell Co. Inc. 200 Minn. 122, 273 N. W. 694.

■ It appears that essential facts in this proceeding could not be established by direct evidence. These facts, however, may be proved by reasonable inferences from the testimony presented at the proceeding. Triers of fact in workmen's compensation proceedings must in determining their findings choose not only between conflicting evidence but also between opposed inferences. Reinhard v. Universal Film Exchange, Inc. 197 Minn. 371, 267 N. W. 223; Hill v. Umbehocker, 201 Minn. 569, 277 N. W. 9; Husnick v. Seeger Refrigerator Co. *supra;* Roberts v. Ray Bell Film Co. 206 Minn. 351, 288 N. W. 591; Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 18 N. W. (2d) 121.

■ The commission concluded that any disability resulting from the injury of May 2, 1923, was fully compensated during the period ending in April 1927 and that any disability after that date resulted from chronic osteomyelitis which had existed since 1912. Since the injury of May 2, 1923, was minor in that the testimony

showed that the skin was barely scraped, the commission took the view that to find that a bruising of the inside of the right knee aggravated the existing osteomyelitis beyond a temporary flareup must be based entirely upon conjecture. The record supports this conclusion. We have said repeatedly that findings of the Industrial Commission upon questions of fact cannot be disturbed unless consideration of the evidence and inferences permissible therefrom clearly requires reasonable minds to adopt a contrary conclusion. This court's scope of review of a decision of the Industrial Commission by means of certiorari is fully stated in 21 Dunnell, Dig. (3 ed.) § 10426.[1]

■ We are not unmindful of the fact that there is no statute limiting the time when the Industrial Commission may on appeal grant a rehearing on the propriety of further allowance of medical benefits necessitated or occasioned by the original injury. The legislature has made no provision for such limitations. See, M. S. A. 176.135. The commission determined that the employee failed to meet the burden of establishing his claims and therefore was not entitled to benefits under the Workmen's Compensation Act.

While the referee found that the employee is in need of further medical care and medications to cure and relieve from the effects of his accidental injury of May 2, 1923, and made an award that the employer and insurer shall furnish the employee such further medical care, together with medications as may reasonably be required to cure and relieve from the effects of said accidental injury of May 2, 1923, the commission vacated said finding and award and substituted therefor its finding that the employee is in need of further medical care and medication *to cure and relieve from the chronic osteomyelitis from which he is suffering.* The substituted findings of the commission, together with a denial of the claim petition, vacates the award for any future medical care or medications as well as the awards for additional weekly compensation and for reimbursement for medications and for medical and hospital expenses.

---

[1]Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888; Corcoran v. P. G. Corcoran Co. Inc. 245 Minn. 258, 71 N. W. (2d) 787; Gray v. City of St. Paul, 250 Minn. 220, 84 N. W. (2d) 606; Krueger v. King Midas Milling Co. 169 Minn. 153, 210 N. W. 871.

 Pursuant to the findings of the commission, all awards granted by the referee were vacated and all claims for compensation denied. We reach the conclusion that the commission as triers of the facts could well determine from the record that the employee had failed to meet the burden of establishing his claims to compensation.

The order of the commission reversing the referee's awards is hereby affirmed.

Affirmed.