JOHN D. THOMAS, APPELLANT, v. SYLVIA E. THOMAS, APPELLEE.

Practice in Supreme Court: DECREE OF DIVORCE. Under the pleadings, the burden of proof being upon the defendant, and the evidence not being sufficient to sustain the verdict in her favor, the decree thereon reversed, the verdict set aside, and a decree for the plaintiff in the supreme court.

APPEAL from Douglas county district court. Heard below before WAKELEY, J.

C. A. Baldwin, for appellant.

No appearance for appellee.

COBB, J.

This action was before this court at the July, 1884, term, and the decree of the district court dismissing the action upon the verdict of the jury in favor of the defendant was reversed, and the cause remanded. See 16 Neb., 533. There was a new trial to a jury, which again found for the defendant. There was a second decree in her favor dismissing the action, and the cause is again brought to this court by appeal.

The following is a synopsis of the pleadings:

### "PETITION.

"The plaintiff says that he married the defendant in Omaha, September 1, 1875. That she represented herself to be a single woman.

"That since said marriage he has discovered that she had had, at the time of his said marriage with her, two husbands, and he asks that she be compelled to answer to his petition under oath a large number of interrogatories, to-wit:

"That she state whether or not she had been married previous to her marriage with him.

"That she give the name or names of her former husbands.

"When and where she was married to them.

"What has become of them. If she has been divorced from them?

"State when and where?

"And he prays that the marriage contract existing between them be declared null and void, for the reason at the time of said marriage she had a living husband, from whom she was not divorced."

"DEFENDANT'S ANSWER.

"The defendant admits the marriage to Thomas as alleged.

"And in answer to the interrogatories propounded, says:

"That prior to her marriage with Thomas she had been twice married.

"Her first husband was Orson Nickerson, to whom she was married in 1857.

"That she was divorced from him in 1866.

"Her second husband's name was Samuel Price; was married to him in 1867, in Wisconsin.

"That Price left her in 1868, without saying where he was going, or anything about it, and that from that time to the present she has not seen nor heard from him.

"That he so left her more than seven years prior to her marriage with Thomas.

"And she avers that both Nickerson and Price are dead.

"She says that she was informed that Price committed suicide about one year prior to her marriage with Thomas, but can't tell the source of her information, when or where she received it.

"She also asks for a divorce from Thomas.

"Upon the trial it was agreed that she was divorced from Nickerson, and that he died before her marriage with Price.

"And the defendant also dismissed her cross bill for divorce.

"So that the only issue now involved in the action is, was husband No. 2, Samuel Price, dead at the time these parties married, to-wit: September 1, 1875."

The district court held that the affirmative of the issue was with the defendant.

Upon the trial, defendant introduced evidence as follows:

Being called as a witness in her own behalf, defendant testified—

"That she married plaintiff September 1, 1875.

"That she married Price May 19, 1867, in Wisconsin.

"That Price left her in the following November, remaining away until March, 1868, when he came back and took her from Wisconsin to Iowa City, Iowa, where he stayed until July 8, 1868. Then he packed his satchel and said he was going away to leave me forever. He conveyed certain property to me through a Mr. Baker, on July 9th, 1868, as I afterwards learned from Baker. It was his right to 80 acres of land where we lived. Since which time I had not seen him, nor had any letter or correspondence with him to know whether he was living or dead. At the time of this suit before, a person told me that there was some one that had seen in a newspaper an account of the death of a man at Iowa City that answered the description of Price. The paper said he was found hanging to the rafters in the cabin where he lived. I never made any effort to ascertain the facts, for I never heard of his going back to Iowa City. I had no friends there that I could write to, and I did not know what to do to find out. I don't know which way he went, or how he went from Iowa City. He had no relations there, or in any other place that I know of. He was an old bachelor when I married him, and a farmer. He lived in Iowa City the first time about four months, and the last about three months. Our place was about two miles from the court-house. He had few with whom he visited; went down town once or twice a week."

CROSS-EXAMINATION.

"I was married to Thomas as Sylvia Preston. I came to Omaha in 1872 or 1873. I came here from Osceola, where I had lived eight months. Before going to Osceola I lived in Chicago a few months. I went to Chicago from

Elgin, Ill., where I had lived a year and a half. I went to Elgin from Chicago, where I lived most of the winter of '70. I came from Red Wing, Minnesota, to Chicago in 1869. I lived in Red Wing two or three years. Before going to Red Wing I lived at Lake City, Minn. I went from Iowa City to Lake City in 1868, I have never been back to Iowa City since I left there in 1868. Price left me July 8, 1868. I don't know why he left, except he got mad. There were unpleasant feelings between us when he left. We built a house in 1868. I remember that a Mr. Brant or Grant did some work on the house. When he went off he said "good-bye," and I said "good-bye." That is the last I ever saw him; I don't know where he went; I left there about Oct. 8th or 10th, same year. I don't know whether he is dead or not. I don't know who told me he had committed suicide; can't tell whether man, woman, or child, it was so long ago; I can't tell where I was at the time. The last time he left he told me he never would come back."

The defendant also read in evidence the depositions of eight witnesses, residents of Iowa City, Iowa, and vicinity, each of whom testified to having known or having had some knowledge of Samuel Price, in or near Iowa City, about the year 1868. None of them were on terms of intimacy with him. They all agree that he left that place in or about 1868. None of them fix the date of departure so as to locate it as being prior to September 1 of that year. None of them had ever seen or heard of him since he left; nor did any of them ever make enquiry, or have any expectation or desire to hear of him. The defendant then called Andrew Frick as a witness in her behalf, who testified that he knew a man named Samuel Price, at Iowa City; knew him first in 1868. Witness was in business there. "I met him about the time I went into business there, in the spring of 1868, and knew him from that time up until the winter of '68. I stayed there through the

winter of '68, but he left all at once, and I never saw him afterwards. * * * I can't fix the date Price left. It was in the fall of 1868. I remained there until the fall of 1869." Upon his cross-examination, the next day, the witness testified: "I can't tell exactly how late in the fall of 1868 I last saw Price; I think it was towards winter. Yesterday, when the matter was mentioned to me, I could not tell; but I have looked over some papers that I have, and it was in November, 1868, that I had a certain transaction, and I know I saw Price not long before or after that. I again say that it was in the fall of 1868 that he left. I will not say he wan't there in 1869."

The plaintiff on his part produced the deposition of Charley Cartwright, of Lucas township, Johnson county, Iowa, who testified to having known Samuel Price and wife, of that vicinity, in the summer of 1868; that Mr. Price left that fall and came back in the spring of 1869. "I don't know how long he stayed on his return to this vicinity. I saw him twice. The last time he was on the road and said he was going to Oskaloosa. This was in the spring of 1869. I can't say when, but it was before June. I have not seen or heard of him since. The last I saw of Mrs. Price was in the fall or early winter of 1868. In 1868 they lived together as husband and wife."

Plaintiff also read the deposition of Thomas B. Grant, of Lucas township, near Iowa City, who testified that he was acquainted with Samuel Price and Sylvia E. Price in 1868, when they lived near Iowa City; that "Mr. Price went away about Sept. 1, 1868, and she left probably in November after; they lived together as husband and wife. * * * I saw Price the last time in the spring of 1869. I should say in the last of April or first of May; I met him on the streets of Iowa City and had a conversation with him. I have not heard of Mrs. Price since she left; I have not seen Samuel Price since the spring of 1869, nor have I heard of him."

Also the deposition of Eliza A. Grant, wife of Thomas B. Grant, who testified to having known Samuel Price and Sylvia E. Price, his wife, in 1868; that she had a conversation with Sylvia E. Price shortly after Samuel Price left, in which she told her that Samuel Price had left her because he was afraid she was going to poison him, and that Price had gone off mad.

Also the deposition of D. A. Jones, of Iowa City, who testified that in 1868 and in 1869 he lived on a farm near Iowa City. "I knew Samuel Price; first became acquainted with him in 1868. He went away in the fall or winter of 1868; he came back the next year in 1869; then he left, since which time I have not seen him or heard from him."

Plaintiff also called J. C. Darbin, of Omaha, who testified as follows: "Live in Omaha; am a carpenter; I lived in Iowa City and vicinity from 1863 to 1873; I knew Samuel Price; first in 1868; not much acquainted with him; I know him when. I see him; the last time I saw him was in Iowa City; was between the 20th and 30th days of May, 1869; I knew him when he lived near Iowa City, but was never at his place; at that time I was in the saw-mill business." Upon cross-examination witness referred to memoranda of business transactions, which he testified enabled him to refresh his memory and state positively as to the time when he last saw Price as above stated, etc.

The sole issue involved in this case is, whether the man Samuel Price was alive or dead at the date of the intermarriage of the parties, to-wit, September 1, 1875. The burden rests upon the defendant to establish by a preponderance of the evidence that he was deceased prior to that day. This she has undertaken to do by proving that he left the place of his former residence more than seven years before that day and has never returned, nor has been heard of by any one there or elsewhere to her knowledge.

If she has succeeded in doing this it will be conceded that she has established a defense. Greenleaf states the law to be that, " where the issue is upon the *life* or death of a person once shown to have been living the burden of proof lies upon the party who asserts the death. But after the lapse of seven years without intelligence concerning the person the presumption of life ceases and the burden of proof is devolved upon the other party." 1 Greenleaf's Evidence, § 41. In the case of *Cox v. Ellsworth*, decided at the present term, we had occasion to consider some of the limitations and exceptions to the rule of law as above quoted, but for the purposes of this case such limitations or exceptions need not be considered.

It is seldom that a court of equity feels constrained to reverse the finding of a jury upon a question of fact, but there are cases in which to do so is a plain duty, and I think this is such a case. From the testimony of the defendant it is clear that Price, her husband, left her in anger and under a sense of wrong, with no intention of returning to her. Nor is there any evidence of his having any intention to ever return to Johnson county, Iowa, nor that he had any tie of family, friendship, or property to tend to bring him back there. Even the defendant herself left almost immediately and removed to Minnesota. Nevertheless, had he remained away for seven years without having been heard of, there or elsewhere, so far as known, by the cold rule of law the presumption of his being still alive would cease. But here we have the testimony of several uncontradicted and unimpeached, disinterested witnesses that he did return and was seen in life within considerably less than seven years prior to the date of the marriage of the defendant with the plaintiff.

The defendant, therefore, failed to establish her defense, that her husband, Samuel Price, had been absent for seven years, so that his death might be presumed at the time of her marriage with the plaintiff, and the jury had

no evidence before them which sustains such finding. The evidence of the defendant herself is of little or no weight from the fact that she left the vicinity of the former residence almost immediately after the alleged departure of her husband, and took up her residence in a distant state; and that of the other witnesses offered by her is scarcely stronger, for none of them had more than a passing acquaintance, nor any business or social relations with Price; and some of them admit that he might have returned to Iowa City or vicinity at any time during the next seven years after his departure and they not have known or heard of it.

The judgment of the district court is therefore reversed, the verdict set aside, and a decree will be entered in this court for the plaintiff as prayed in the petition.

DECREE ACCORDINGLY.

The other judges concur.