# ROSE GOLOB v. BUCKINGHAM HOTEL AND ANOTHER.[1]

April 7, 1955.

No. 36,514.

*Roy J. Brumfield* and *Johnson, Sands & Brumfield,* for relators.
*Nemerov & Perl,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review a decision of the industrial commission awarding compensation to dependent of a deceased employee.

Edward Golob was employed by the Buckingham Hotel as an upholsterer. On the morning of March 12, 1952, he left his home as usual. His wife saw nothing unusual about his appearance or conduct. About 11:30 or 12 o'clock, a resident of the hotel, Mrs. Geneva Mackey, saw him in the room in which he worked. He appeared to be his usual joking self. The room in which he worked was small, and pieces of furniture were piled up against the wall. Mrs. Mackey inquired about an ottoman which Golob was to fix. In an effort to locate the ottoman, he stood on a davenport and began to move some chairs which were piled up. The chairs he moved were overstuffed chairs of the type which go with a set. They were clumsy to handle, weighing about 40 to 45 pounds. When he had moved

---

[1]Reported in 69 N. W. (2d) 636.

three or four of these chairs, he stopped abruptly, sat down on the davenport, winced, and clutched his hand to his chest. According to Mrs. Mackey, he looked very bad and his color changed to gray white. He was perspiring and breathing heavily. He said that he did not feel good. Mrs. Mackey saw him again a couple of hours later having a cup of coffee, and he then stated that he did not feel good and that he was going to go home.

Mrs. Ann Stephens, a fellow employee, saw Golob about 12:30 and again between 2 and 2:30 on the afternoon of March 12. Her testimony is that he did not look good and that his color was grayish. In response to her question as to what was the matter, he stated that he had hurt himself in lifting and got an awful pain in his heart and chest.

Prior to this occurrence, Golob had had some trouble with his back and had undergone two surgical operations for that trouble, but there was no evidence of any heart trouble.

Mr. Golob was found by another employee lying on the floor about four o'clock. He was then dead or died before he could receive any medical attention.

The referee made findings in favor of employee's dependent. On appeal, the commission affirmed without making independent findings or writing an opinion in connection therewith.

It is conceded by all that employee died of a coronary thrombosis. The only issue here is whether there is evidence of a causal relationship between the thrombosis and his employment.

Employer contends (1) that the findings of the referee are based on the testimony of Mrs. Mackey and that her testimony is so inconsistent, contradictory, and improbable that it cannot be accepted as a basis for the findings; (2) that the activities of employee on the day in question did not involve such an undue exertion as to constitute an accidental injury within the compensation act; and (3) that under the medical testimony the exertion here involved could not have been a causal factor in the formation of the coronary thrombosis causing death.

■ Mrs. Mackey first testified quite generally as to what she observed. When the first medical witness was called, an attempt to elicit his opinion based on a hypothetical question was met by continued objection due to insufficiency of the evidence as to the exertion occasioned by the employee's activities. Mrs. Mackey thereafter was recalled and testified more in detail. Employer now contends that her testimony on these two occasions is so contradictory and inconsistent as to be unworthy of belief. We have carefully examined the testimony of Mrs. Mackey, and it would serve no purpose to unduly lengthen this opinion by setting it forth in detail. It is enough to say that the credibility of witnesses is for the trier of fact and that the testimony of Mrs. Mackey is not such that it must be held as a matter of law to be unworthy of belief. The rule that "If the testimony of an unimpeached witness is so improbable or contains so many contradictions as to furnish substantial reasons for believing it to be false, such testimony may be disregarded,"[2] which employer seeks to invoke here, is a rule to be applied by the fact finders, not by this court on appeal.

■ Whether trauma or exertion can ever cause a coronary thrombosis and, if so, whether the exertion here involved did have a causal relationship to the admitted thrombosis may as well be considered together.

Four doctors testified as medical experts. As is quite common in this type of case, they differ as to whether the exertion shown to have occurred here had a causal relationship to the thrombosis, which it is admitted was the immediate cause of death.

Under our decisions construing our statute (M. S. A. 1949, § 176.02) as it existed at the time of the occurrence of the incident relied on here, it became necessary for the claimant to show some unusual exertion which caused the formation of the blood clot and the resulting occlusion and death. Many of our cases on this subject are collected and discussed in Kemling v. Armour & Co. 222 Minn. 397, 24 N. W. (2d) 842. See, also, Stephen v. Miles Const. Co. 240 Minn. 307, 60 N. W. (2d) 801. We need not repeat what already has been ade-

---

[2]Campbell v. Nelson, 175 Minn. 51, 54, 220 N. W. 401, 403.

quately covered in those cases. The unusual exertion rule often has led to peculiar results in the courts.[3] The modern trend has been away from a strict interpretation of the rule.[4] Our statute was modified by L. 1953, c. 755, § 2 (M. S. A. 176.021).[5]

There is much of interest from a medical viewpoint in the record and briefs. It would be of no value to set forth the opposing views of the medical experts. It is sufficient to say that it is apparent that in this field of medicine, as well as others, even those specializing in the field do not agree on the question whether trauma or exertion can cause the formation of a blood clot and the resulting thrombosis.[6] It is possible that part of the difficulty in understanding the divergence of views of doctors comes about by virtue of the difference in approach to the question of causation by members of the medical and legal professions.[7] However that may be, until the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact. Where qualified medical witnesses differ as they do here, it ordinarily is not for us on appeal to say that one is so eminently right and the other so clearly wrong that the fact finder was obliged to accept the opinion of one and discard the opinion of the other. The determination of this question is like the determination of any other question of fact, and it must depend to a large extent

[3]See, Larson, *The Legal Aspects of Causation in Workmen's Compensation*, 8 Rutgers L. Rev. 423, 430-431.

[4]Horovitz, Current Trends in Workmen's Compensation, p. 499; Horovitz, Workmen's Compensation, p. 88; 1 Larson, Workmen's Compensation Law, § 38.30.

[5]Where the statute does not require proof of accident it probably is unnecessary to prove unusual exertion. See, Riesenfeld, *Contemporary Trends in Compensation for Industrial Accidents Here and Abroad*, 42 Calif. L. Rev. 531, 544; Horovitz, Current Trends in Workmen's Compensation, p. 501; Note, 34 Minn. L. Rev. 377.

[6]See, for instance, discussion of Boas, *Trauma and Heart Disease*, 2 NACCA L. J. 113; Liberty Mut. Ins. Co. v. Industrial Acc. Comm. 73 Cal. App. (2d) 555, 166 P. (2d) 908.

[7]See, Small, *Gaffing at a Thing Called Cause*, 31 Tex. L. Rev. 630.

upon the credibility attached by the trier of facts to the opinion and testimony of the various witnesses who are expressing their opinions. In this case the finding of the commission is adequately supported by the record.

The other questions presented have been examined but merit no discussion. We find no reversible error.

Petitioner is allowed $250 attorneys' fees and costs and disbursements herein.

Affirmed.