# HAROLD NIESS v. SUPERIOR PACKING COMPANY.

81 N. W. (2d) 773.

March 15, 1957—No. 36,991.

*William W. Fink,* for relator.
*James Bunker,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding benefits to an injured employee.

Relator, Superior Packing Company, operates a slaughterhouse in St. Paul where claimant, Harold Niess, was employed as a "poleman" in the cooler room. It appears that sides (half of a carcass) of beef are moved into the cooler room hung on overhead rails. Part of employee's duties consisted of switching carcasses from one rail to another in sorting the beef and also of lifting sides of beef in various operations. In the switching operations, the men used a pole with a metal tip. Sometimes, if they were not agile enough to get out of the way, the end of the pole would strike them in the groin and other parts of the body. Employee filed his claim petition alleging that on October 5, 1953, and again on November 4, 1953, he sustained injuries from such work for which he seeks benefits under the Workmen's Compensation Act. At the hearings, he testified that on October 5 he noticed a severe pain in his leg, which he attributed to a blow he had received from the pole he was using

sometime during the previous week. He stated that he called on the company nurse, Laurene Foss, who sent him to two of the company's doctors. Dr. Williams, Sr., put an ace bandage on his leg and recommended tension. Sometime thereafter he visited the Veterans Hospital, and doctors there recommended hot-pack treatments. He lost no time from work because of these injuries. He testified that on November 4, 1953, while lifting carcasses from one rail to another, he lost control of his pole when a side of beef fell partially off the rail and that, when attempting to handle the beef, he felt a severe jerk and a heavy pull with sharp pain. He reported to the nurse a few days later, but she informed him that the injury was not severe enough to see a doctor. He did, however, see Dr. Williams, Jr., on November 12 but was given no treatment. He kept on having pain and eventually saw an osteopath, who, after examining him, referred him to Dr. Donovan L. McCain, an orthopedic specialist. After an examination, Dr. McCain had him hospitalized. He entered St. Luke's Hospital on December 17 and remained until December 24. He again was hospitalized from January 1 to January 30, 1954. He returned to work on February 23, 1954, but continued to have pain.

Mrs. Foss, the industrial nurse, admitted that Niess called on her on October 5, 1953, but claimed that he was treated only for the removal of a foreign substance from his eye. Employer's doctor admits that Niess had some trouble with his back and leg but claims that this trouble was due to prior injuries. He was of the opinion that disability was not due to his employment. Dr. McCain was of the opposite opinion. The referee found that a causal relationship existed between the claimed injuries and the employment. The Industrial Commission affirmed, one commissioner dissenting.

The only question presented here is whether the evidence sustains the finding that the injuries alleged arose out of and in the course of the employment.

It seems useless to continue to cite authorities in support of the rule which we have so frequently repeated that, in determining whether the evidence sufficiently supports the finding of causal connection, the question is not whether we would have made the same

finding were we sitting as the factfinder but rather whether the evidence is such that it permits an inference to be drawn from the accepted facts to warrant the finding.[1] We should also keep in mind the rule that, in determining whether the evidence sustains the findings of the commission, the evidence must be viewed in the light most favorable to the findings.

Apparently it is employer's position that causal connection has not been established here because employee could not point to the exact bump which caused his trouble. In its brief, employer states:

"The employe did not testify before the Commission as to the exact incident or the specific date. The question arises can compensation be awarded when the exact incident and the specific date are not given."

And again:

"* * * The burden of proof is upon the employe, and he must come in and prove an exact incident and an approximately correct time."

Employer sums up the case by saying:

"* * * Viewing the record in its entirety, it is clear that the employe did have a back injury. It is also clear that he could not point to the incident that caused this injury nor the time when it occurred."

Where the ultimate difficulty is due to injuries such as we have here, we do not understand the rule to be that the employee must be able to point to the exact blow which caused the difficulty. It may be due to the accumulated effect of several blows. He may have received a blow or sustained a strain, which at the time he did not believe to be serious enough for him to quit work, but it may have developed later to have been more serious than originally appeared. One bump or strain followed by another may eventually have been enough to disable him. It is undoubtedly true that employee had

---

[1]See, for instance, Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67.

suffered some injury before those which he now claims caused his disability. He suffered a disability while in the Army. He had seen doctors on frequent occasions prior to October 5, 1953, but those facts alone do not detract from the fact that he still may have suffered an injury at the time he claims he did which caused the trouble for which he now seeks compensation. It seems quite clear that he did sustain a blow of some severity on or about November 4, even if we rely on the testimony of employer's doctor and nurse. Laurene Foss, the nurse, testified that on November 10, 1953, she saw employee and that on that day—

"A. P. C. tablets No. 2 given for aching of right lower leg. States he has had the pain for several weeks, but thinks it was aggravated last week when he was hit on the leg by a pole while working in the cooler. Not previously reported. Instructed to see Dr. Williams in this department in the morning."

On November 12 employee saw Dr. Williams, and Mrs. Foss testified:

"States today he was struck by a pole on the upper right leg last week and pain has been becoming progressively worse since. Will see Dr. J. Williams in the morning."

Her records show:

"On November 13 examination by Dr. John Williams revealed a very small contusion on the medial aspect, middle third of the right thigh."

Dr. John A. Williams testified as follows:

"* * * On the 12th day of November, 1953, he [employee] stated that he was struck by a pole on the upper right leg, last week, and the pain had become progressively worse. I saw him again on the 13th and at that time a very small contusion on the medial aspect of the middle third of the right thigh was noted."

He later testified:

"Q. And when you saw him on November the 10th, 1953, he informed you that he was struck by a pole in the cooler, did he not?

"A. That was on the 12th.

"Q. That was on the 12th?

"A. Yes, sir, 12th day of November."

It is true that Mrs. Foss testified that employee made no complaint of having been injured on October 5, 1953, which was directly contrary to what employee had testified. The credibility of the witnesses was for the Industrial Commission. Taking the evidence as a whole, and particularly when we view the evidence in the light most favorable to the findings, we must hold that it is not so conclusively in favor of employer that reasonable minds could not have found as the Industrial Commission did.

Employer contends also that, inasmuch as Dr. McCain stated that he had no knowledge of the injuries suffered by employee prior to October 5, his opinion is of no value. It would be useless to relate all the evidence upon which Dr. McCain based his opinion. He was definitely of the opinion that "the symptoms which he had, or complaints, are directly related to the injuries which he described." The injuries which he described were those which occurred on or about October 5 and on or about November 4.

It is true that Dr. McCain did say on cross-examination that he was not told that employee was having trouble with his back in October or November 1950, but no attempt was made to pursue the matter further or otherwise to impeach his opinion. The mere fact that other doctors differ with Dr. McCain is not enough to require the factfinder to accept the opinion of other doctors and disregard that of Dr. McCain.[2]

Viewing the record as a whole, we think that the appeal presents nothing but a question of fact. The evidence sufficiently sustains the commission's finding of causal relationship between the injuries claimed to have been suffered and the employment.

Affirmed.

[2]Golob v. Buckingham Hotel, 244 Minn. 301, 69 N. W. (2d) 636.