HANNA *v.* AETNA INS. CO.

(No. D-82803—Decided March 20, 1970.)

Municipal Court of Dayton.

*Messrs. Baggott, Logan & Gianuglou,* for plaintiff.
*Messrs. Holzfaster, Hoefling & Cecil,* for defendant.

RICE, J. This cause came on to be heard on its merits, by the court, without the intervention of a jury, upon the pleadings and the testimony of both parties and their witnesses. In addition, the court has had the benefit of the excellent trial briefs and memoranda furnished by counsel for both parties.

Basis of the Controversy and Issue Involved.

The plaintiff is bringing suit against his own insurance carrier, under the medical pay provisions of his policy, for injuries allegedly sustained by his wife, when riding as a passenger, in an automobile accident on November 21, 1962.

There is no dispute as to the fact that the accident occurred when the plaintiff's automobile was struck from the rear, or that there was, on the date of the accident in question, a policy of insurance under the terms of which the defendant was to pay to the plaintiff all reasonable medical expenses incurred within one year from the date of an accident, for necessary medical, surgical, X-rays, hospital services and prosthetic devices.

There is, further, no dispute that as a result of the accident, the plaintiff's wife sustained certain injuries, to wit, a cervical strain, for which certain medical expenses were incurred which are properly owing to the plaintiff under the terms of the policy. Of the total amount of $1,-103.91 prayed for in the petition (note the amount of the prayer has been amended to conform with the proof, as only those items incurred within one year are properly prayed for), the defendant admits liability for that portion which is directly attributable to the cervical strain—$130.85. In addition, the plaintiff himself was slightly bruised in the accident and incurred a $15.00 charge for X-rays. Although this sum was not prayed for in the petition, the court will permit an amendment to the petition, to conform to the proof, to enable the plaintiff to be reimbursed for this sum. Thus, $145.85 is conceded to be due and owing the plaintiff.

The plaintiff claims also that, as a direct and proximate result of the accident, his wife suffered traumatic cancer in the left breast, which made necessary the removal of the same by a radical mastectomy. This the defendant specifically denies.

At issue then are the questions of: *Firstly,* whether the plaintiff's wife's traumatic cancer in the left breast which necessitated its removal by surgical procedures is the direct and proximate result of the aforesaid automobile accident; and, *secondly,* whether the medical bills in the amount of $958.06, stipulated to be occasioned by the traumatic cancer, are payable by the defendant as coming within the terms of the aforementioned policy.

Facts.

The plaintiff's evidence showed that on November 21, 1962, his wife was riding as a passenger in his car when it was struck from behind. The impact jerked her backwards and then threw her forward, onto her knees, into the projection of the dashboard which she struck with her left breast. Her chief complaint after the accident was in the area of the neck, but she noted that she was sore in the area of the chest as well as all over her body.

Shortly after the accident, in December 1962, while under treatment for a cervical strain, Mrs. Hanna first noticed a bruise on her left breast, in the area where the trauma, or striking of the breast against the dashboard, had occurred. This bruise was followed by needle-like, sharp and tingling pains in the identical area. In January of 1963, while attending to her father's funeral away from Dayton, she first noticed that the left breast, in the same area as the aforementioned trauma, pained her to touch. It was at this time that intermittent drainage began to occur from this spot. In February of 1963, three months after the date of the accident, upon her return to Dayton, Dr. Austin found a lump at the site of the original bruise. In June of 1963, Dr. Austin excised a malignant, non-metastasized mass from the left breast in the same area as the trauma of November 21, 1962. The entire left breast was removed.

The evidence further showed that Mrs. Hanna's parents had both died of cancer and that she, herself had in 1958, been operated on for benign tumors of both breasts. The evidence is contradictory as to whether the bruise and mass in question here arose at the site of the surgical scar from the 1958 removal of the benign tumor or, as Mrs. Hanna testified on cross-examination, one-half inch to one inch to the left of the surgical scar. There had been no recurrences of these tumors prior to the date of the accident. In September of 1962, some two months prior to the accident, prior to routine hemorrhoid surgery, Dr. Austin had examined her breasts and found them normal and free of lumps and masses.

Mrs. Hanna has had no recurrence of her breast cancer prolem in the 6½ years since her surgery.

Dr. Robert Zipf, pathologist, testified for the plaintiff. The doctor testified that in his medical opinion, a single trauma or single blunt force blow can cause cancer at the site of the trauma. He answered a hypothetical question, containing all the operative facts in evidence, to the effect that he discerned, within reasonable medical certainty, a direct causal relationship between the injury of 1962 and

the appearance of cancer in the left breast necessitating surgery. He bases his conclusion upon three major points: *Firstly,* upon the close timing or sequence of events between the initial trauma and the discovery of the bruise, to the tingling, to the pain, to the discharge and finally to the lump and the mass, all of which occurred at the site of the original trauma. *Secondly,* Dr. Zipf found significance in the fact that the cancer was in the duct rather than in the lymph nodes and had not metastasized. This, he felt, showed a mass of comparatively recent origin. *Thirdly,* the fact that some 6½ years have passed without a recurrence of the cancer indicates a single blow or single cause cancer, traumatically induced. The conclusion was also buttressed by what Dr. Zipf referred to as Ewing's Postulates for proof in traumatic cancer cases. These postulates, all of which it appears the plaintiff was able to establish in evidence, are as follows:

(1) Previous integrity of the wounded part

(2) The nature, authenticity and severity of the trauma

(3) Cancer diagnosis

(4) Origin of the cancer at the place of injury

(5) Reasonable time relationship between the date of trauma and the appearance of the cancer (in the case at bar, some three months)

(6) Character or structure of the resulting growth (in the duct, non-metastasized).

The defendant's case consisted of the testimony of a pathologist, Dr. R. K. Bartholomew, who stated, in answer to a hypothetical question that the trauma and cancer were *not* causally related. He based his answer primarily on the fact that the integrity of the breast was not shown to be cancer free prior to the injury, referring to the 1958 benign tumor. He felt that the trauma from the 1958 surgery could well have been the initiating trauma producing the 1963 mass.

Of particular signf:icance to the court were Dr. Bartholomew's remarks on cross-examination. He admitted that Mrs. Hanna's symptoms might well be the very

"bridging" symptoms referred to by Dr. Zipf and that her cancer can be held to have occured within a reasonable time following the trauma. He conceded that the facts of the accident constituted a significant trauma within the meaning of the Ewing Postulates. Moreover, the doctor's conclusion of no trauma-cancer relationship appeared to be based on the fact that he admittedly does not believe in a single blow, traumatically induced cancer. He feels that a single blow could in no case cause cancer, because there is no well documented, absolute scientific proof that such a relationship can exist.

The Law.

Reference has already been made to the excellent briefs and memoranda submitted by counsel for both parties. The citations contained therein, all of which the court has reviewed, certainly constitute an excellent compendium of case law on the subject of traumatically induced cancer. Rather than unduly prolonging this opinion by extensive quoting of cases referred to in these memoranda, the court will simply state a few general principles, citing for illustrative purposes, the various cases which we feel stand for the principles involved.

One golden thread shines ever brightly throughout all the cited authorities. No one knows the *medical* cause of cancer. However, all lawsuits, including this one, deal not with the question of medical cause or medical proof to an absolute certainty, but rather with the question of legal causation by a preponderance of the evidence. Therefore, we deal with legal, rather than medical, questions.

Most of the cited cases referred to "the sequence of events" between the trauma and the development of the cancer. Courts generally hold that this sequence of events, if closely connected in time, is generally enough to present a factual question as to whether the cancer is the result of an injury. One case that is illustrative of these principles is *Austin* v. *Red Wing Sewer Pipe Co.*, 163 Minn. 397. 204 N. W. 323. In that case an employee unloading coal from a gondola car, trying to throw a piece of coal out of the car the coal struck the top of the car, bounced back

striking him in the cheek. He was not disabled and worked, but the wound continued under care for a year when cancer was found at the site of the injury. Medical testimony attributed the cancer to the injury. There was medical testimony contra. The court indicated that the circumstances themselves were strong evidence of the injury being the proximate cause of the cancer. There was no break in the chain of causation. If the medical profession conceded it did not know the cause of cancer, the connecting events between cause and effect might be sufficient to justify the conclusion that the injury was the legal cause, because whether the result was caused by the blow or the constant irritation thereafter is of little consequence. Testimony of one doctor was that the cause of cancer is not definitely known; that cancer seldom comes from an injury; that there are a number of different theories advanced by the medical profession but they are all theoretical; that it is speculative to advance theories that the cancer was due to the injury does not render this finding conjectural.

See also *Pittman* v. *Pillsbury Flour Mills,* 234 Minn. 517, 48 N. W. 2d 735; *Daly* v. *Bergstedt,* 267 Minn. 244, 126 N. W. 2d 242; and *Murray* v. *Industrial Commission,* 87 Ariz. 190, 349 P. 2d 627, in which the court made the following observation at page 199:

"The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result."

See also *Golob* v. *Buckingham Hotel,* 244 Minn. 301, at page 304, in which the court said:

"It is possible that part of the difficulty in understanding the divergence of views of doctors comes about by virtue of the difference in approach to the question of causation by members of the medical and legal professions. However that may be, until the time comes when medical

knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact. Where qualified medical witnesses differ as they do here, it ordinarily is not for us on appeal to say that one is so eminently right and the other so clearly wrong that the fact finder was obliged to accept the opinion of one and discard the opinion of the other. The determination of this question is like the determination of any other question of fact, and it must depend to a large extent upon the credibility attached by the trier of facts to the opinion and testimony of the various witnesses who are expressing their opinions.''

Great efforts are expended by the defendant in distinguishing many of the plaintiff's cases on their factual situations, pointing out that many of the plaintiff's cases did not deal with traumatically induced cancer. The court feels that this particular distinction is not significant since the cases are cited only for the proposition that there is a difference between absolute medical proof, scientifically documented, and the somewhat less exacting standard of proof of legal causation by a preponderance of the evidence.

Decision

The court feels that the plaintiff has sustained his burden of proof by a preponderance of the evidence that the *legal* cause of Mrs. Hanna's cancer was the trauma of November 21, 1962. Mrs. Hanna's testimony concerning the trauma and describing the sequence of events between the trauma and the discovery of the mass three months later, coupled with Dr. Zipf's conclusion, based upon the facts in evidence, that the trauma and cancer are causally related, fulfills this burden.

The defendant's entire case, Dr. Bartholomew, takes the position of denying relationship, not based on the facts in this particular case, but based rather on his belief that a single-blow trauma can in no case cause cancer because there has been, to date, no documented scientific proof of such a relationship.

Therefore, the court finds that the trauma of the auto-

mobile accident is the direct and proximate cause of the breast cancer which, in turn, necessitated the incurring of the medical bills in question. The court thus finds that the total of $958.06, the amount expended for the cancer problem within one year following the accident, is properly due and payable under the terms of the policy.

Wherefore, the court enters judgment in favor of the plaintiff in the amount of $1,103.91, plus costs.