# ERWIN MILLER v. NORRIS CREAMERIES AND OTHERS. STATE TREASURER, CUSTODIAN OF THE SPECIAL COMPENSATION FUND.

235 N. W. 2d 203.

October 24, 1975—No. 45344.

*Jardine, Logan & O'Brien* and *Michael J. Healey*, for relators.

*Van Eps, Gilmore & Chantry* and *Curtis C. Gilmore*, for respondent insurer.

*Warren Spannaus*, Attorney General, *Peter W. Sipkins*, Solicitor General, and *Kenneth McCoy*, Special Assistant Attorney General, for respondent State Treasurer, Custodian of the Special Compensation Fund.

Heard before Otis, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is a writ of certiorari issued to review a decision of the Workmen's Compensation Commission. The commission affirmed the findings and determinations of the compensation judge who, among other things, denied the reimbursement claim of relators, Norris Creameries and its insurer, Firemen's Fund American Insurance Companies (hereafter Firemen's Fund), against respondent special compensation fund. We reverse.

Erwin Miller, the injured employee, was employed by Norris Creameries as a milkman from 1942 to August 1972. On November 16, 1964, he injured his back while loading his truck. Miller underwent a laminectomy and excision of a herniated disc at the L4-5 level on January 5, 1965. Bituminous Casualty Corporation, which insured Norris Creameries at the time, paid medical expenses, temporary total disability benefits, and compensation for a 10-percent permanent partial disability to the back. Miller was entitled to 35 weeks of permanent partial disability benefits as a result of this injury.

In August 1970, Norris Creameries registered Miller with the Workmen's Compensation Commission as an employee having a preexisting physical impairment under Minn. St. 1969, § 176.131, the "second injury" statute.

On August 1, 1972, Miller again injured his back while loading a truck and underwent further surgery in the same area as the previous operation. Scar tissue, bone, and disc-like material were removed from the area and the nerve root was again freed as it had been in the first operation. The second surgery caused a foot-drop condition, and Miller has been unable to return to work. The compensation judge found that Miller incurred an additional 10-percent permanent partial disability of the back and a 20-percent permanent partial disability of the left leg as a result of the 1972 injury. The compensation judge also found that the second injury would not have occurred "except for" Miller's preexisting back condition.

At the time of the 1972 injury, Norris Creameries was in-

sured by Firemen's Fund. Despite the finding that the first injury was an "except for" cause of Miller's ultimate disability, both the compensation judge and the commission denied Firemen's Fund's claim against the special compensation fund. The basis of the denial was a 1971 amendment to Minn. St. 1969, § 176.131, Minnesota's second-injury statute.[1]

Under the second-injury statute an employer or its insurer may bring a claim against the special compensation fund for partial reimbursement of the benefits paid an injured employee if the employee's injury or disability "would not have occurred except for [a] preexisting physical impairment" or if the employee's disability is "substantially greater, because of a preexisting physical impairment."[2] In order for the employer to be eligible for reimbursement, the employee's preexisting physical

[1] L. 1971, c. 589. See this opinion, *infra,* for text of the 1971 amendment.

[2] Minn. St. 176.131, subds. 1 and 2, now provides: "Subdivision 1. If an employee incurs personal injury and suffers disability that is substantially greater, because of a pre-existing physical impairment, than what would have resulted from the personal injury alone, the employer shall pay all compensation provided by chapter 176, but he shall be reimbursed from the special compensation fund for all compensation paid in excess of 52 weeks of monetary benefits and $2,000 in medical expenses, subject to the following exceptions:

"If the personal injury alone results in permanent partial disability to a scheduled member under section 176.101, the monetary and medical expense limitations shall not apply and the employer shall be liable for such compensation, medical expense, and retraining attributable to the permanent partial disability, and he may be reimbursed from the compensation fund only for compensation paid in excess of such disability.

"Subd. 2. If the employee's personal injury shall result in disability or death, and if the injury, death, or disability would not have occurred except for the pre-existing physical impairment, the employer shall pay all compensation provided by chapter 176, but shall be reimbursed from the special compensation fund for such compensation only where the permanent physical impairment contributing to the second injury is diabetes, hemophilia or seizures."

impairment must be registered with the commission prior to the second injury.[3]

In August 1970, when employee Miller was registered as having a preexisting physical impairment, Minn. St. 1969, § 176.131, subd. 8, defined "physical impairment" as follows:

" 'Physical impairment' means any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment."

The 1971 amendments which became effective before Miller suffered the second injury to his back altered that definition to read as follows:

" 'Physical impairment' means any physical or mental condition that is permanent in nature, whether congenital or due to injury, disease or surgery and which is or is likely to be a hindrance or obstacle to obtaining employment provided that, physical impairment as used herein is limited to the following:

   (a)   Epilepsy,

   (b)   Diabetes,

   (c)   Hemophilia,

   (d)   Cardiac disease,

   (e)   Partial or entire absence of thumb, finger, hand, foot, arm or leg,

   (f)   Lack of sight in one or both eyes or vision in either eye not correctable to 20/40,

   (g)   Residual disability from poliomyelitis,

   (h)   Cerebral Palsy,

   (i)   Multiple Sclerosis,

   (j)   Parkinson's disease,

   (k)   Cerebral vascular accident,

   (l)   Chronic Osteomyelitis,

   (m)   Muscular Dystrophy,

   (n)   Thrombophlebitis,

---

[3] Minn. St. 176.131, subd. 3.

(o) Any other physical impairment for which at least 50 weeks or more of weekly benefits would be payable as permanent partial disability if the physical impairment were evaluated according to standards used in workmen's compensation proceedings, and

(p) Any other physical impairments of a permanent nature which the commission may by rule prescribe." L. 1971, c. 589, § 4.

Miller's original back injury constituted a "physical impairment" prior to the 1971 amendment, but, because it entitled him to only 35 weeks of permanent partial disability benefits, it did not constitute a "physical impairment" under the amended language.

The issue before us on this appeal is whether the registration of an employee as suffering from a preexisting "physical impairment" under Minn. St. 1969, § 176.131, vests in the employer and its insurer a right to reimbursement from the special compensation fund which will not be destroyed even though the legislature amends the statute to change the definition of "physical impairment" before the employee suffers a second injury. We hold that the right to reimbursement from the special compensation fund vests in the employer and its insurer on the date that an employee is registered as suffering from a preexisting physical impairment.[4]

We base our decision primarily on our conclusion that any other rule would unfairly penalize employers and insurers who have rightfully relied on the law in effect at the time of registration. In Lutz v. Spencer Packing Co. 304 Minn. 1, 229 N. W.

---

[4] See, Stangel v. Lakehead Const. Co. 306 Minn. 86, 88, 235 N. W. 2d 200, 202 (1975), in which we held that an employee who was "deemed to be registered" under the terms of Minn. St. 1969, § 176.131, subd. 4, remains registered and that his employer or its insurer is entitled to reimbursement from the Special Compensation Fund when there is a subsequent injury which otherwise qualifies the employer or its insurer for such reimbursement.

2d 14 (1975), we considered the question of whether a 1969 amendment that altered the circumstances under which formal registration of physically impaired employees was required should be applied to invalidate all preexisting informal registrations. We held that the statute applied only to new registrations because employers and insurers had justifiably relied upon the existing informal registrations.

Inequities similar to those with which we were concerned in Lutz would result here were we to apply the amended definition of "physical impairment." At the time a handicapped employee is hired, an employer may ascertain whether that employee is "physically impaired" and, in so doing, determine and evaluate the magnitude of its potential liability in hiring him. If the right to reimbursement does not vest at the time of registration, however, employers would find it necessary to continually monitor the amendments to the statute and the physical health of their employees and reassess their own risks accordingly. We cannot assume that employers maintain sufficient familiarity with the details of their employees' handicaps to assess the effects of a change in the statutory definition of "physical impairment." Yet, sound personnel and insurance-rating decisions depend upon the ability of employers and insurers to make such assessments. Employers and insurers have the right to expect that an employee registered as "physically impaired" will remain so for purposes of the employer's entitlement to reimbursement from the Special Compensation Fund.

There is yet another reason why we hold that the right to reimbursement vests at the date of registration. We have held on a number of previous occasions that the primary purpose of the statute is to encourage the employment of handicapped workers. See, e. g., Koski v. Erie Min. Co. 300 Minn. 1, 223 N. W. 2d 470 (1974); Beson v. Carleton College, 271 Minn. 268, 136 N. W. 2d 82 (1965); McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. 2d 519 (1960). That purpose would not be served if the legislature may at any time redefine "physical impairment" so

as to exclude workers previously hired. This would leave the employer with two equally undesirable alternatives: Attempt to discharge the workers newly excluded from coverage under the statute, or accept greatly increased potential liability in the event of a second injury. Employers might well seek to avoid such a dilemma by refusing to hire the handicapped.

We recognize that there is language in some of our earlier decisions which suggests that the right to claim reimbursement from the special fund vests at the time of the second injury. To the extent that those decisions are inconsistent with our holding today, they are hereby overruled.

Because we hold that the right to reimbursement vests as of the date of registration, we must conclude that the commission's application of the amended definition to this case was improper. As we said with respect to a similar issue in Yaeger v. Delano Granite Works, 250 Minn. 303, 308, 84 N. W. 2d 363, 366 (1957):

"Where, as here, the liability of the employers and insurers has been fixed * * *, their vested right in such determined liability may not be destroyed by legislation which imposes a new obligation or an additional liability. * * * In these cases the statute imposed a new obligation on the employer and insurer in that they were made liable for the payment of an additional $2,500 compensation. Since a workmen's compensation act is contractual in nature, any statute which purports to alter a substantial term of the contract which was in effect at the time the controlling event occurred * * * impairs the obligation of such contract and is therefore unconstitutional."

Consequently, we hold that the 1971 amendment to Minn. St. 1969, § 176.131, subd. 8, must be construed to apply only to employees registered after the effective date of the amendment.

Firemen's Fund has raised several additional issues, but in light of our resolution of this first issue we need not reach or decide them.

Reversed and remanded to the Workmen's Compensation Commission for further proceedings consistent with this opinion.