John **FRYHLING**, Respondent,

v.

**ACROMETAL PRODUCTS, INC.**, et al., Respondents,

**Parten Machinery Company**, et al., Relators,

**State Treasurer, Custodian of the Special Compensation Fund**, Respondent.

No. 48015.

Supreme Court of Minnesota.

July 28, 1978.

Fitch & Johnson, Minneapolis, for relators.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and Timothy J. McCoy, Minneapolis, for respondent Fryhling.

Darrell M. Hart, St. Paul, for respondent Acrometal Products.

Warren Spannaus, Atty. Gen., Winston Ehlmann, Asst. Atty. Gen., St. Paul, for respondent State Treasurer.

Heard before ROGOSHESKE, TODD and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Certiorari upon the relation of Parten Machinery Company (Parten), employer, and Federated Mutual Insurance Company, its insurer, to review a decision of the Workers' Compensation Court of Appeals awarding compensation to employee, John Fryhling, because of the aggravation of a previous industrial injury to his left wrist and hand while he was operating a turret lathe as a machinist for Parten. Relators challenge the sufficiency of the evidence to support the factual findings of employee's work-related disability. Additionally, they challenge the court of appeals' disposition of employee's claim for travel and incidental expenses as part of his medical expenses, attorneys fees, and employer-insurer's reimbursement from the Special Compensation Fund (Fund). We find the evidence adequate to support the court of appeals' disposition of all claims except the order directing reimbursement from the Fund. We remand with directions to modify reimbursement from the Fund for any amounts paid in compensation benefits in excess of 26 weeks and medical expenses in excess of $1,000.

Employee's injuries arose out of his employment with Parten when a previous injury to his hand and wrist became severely aggravated while he was operating a turret lathe for Parten.

Since 1959, employee has worked off and on for several different employers as a machinist. In 1970, while employed for Acrometal Products, Inc., he sustained a work-related injury to his left wrist and hand in which the radial nerve and certain tendons apparently were cut. Dr. Kenath H. Sponsel performed the initial surgery on the wrist. Employee's wrist and hand were later treated by Dr. Ronald L. Lenscheid of the Mayo Clinic, who recommended that he have further elective surgery to alleviate some of the stiffness and pain, but employee declined the surgery. Employee returned to work as a machinist in September 1973 and worked at two other jobs before he was hired by Parten. He started to work for Parten in December 1974 and operated a variety of machines until the middle of January 1976, when he was assigned a new job operating a turret lathe. Employee testified that in operating the machine he constantly had to strike the tool post holder with his left hand. He further testified that after performing this job for about 1½ days his left wrist and forearm became extremely sore, swollen, and stiff. His symptoms were so severe that he consented to further surgery, which was performed on February 4, 1976. Dr. Lenscheid testified, based partly on a hypothetical question, that employee should not return to a machinist occupation. The compensation judge ordered employee to report to the Department of Vocational Rehabilitation for evaluation and certification for retraining.

With respect to their principal claim, relators argue that employee did not aggravate his wrist injury while working the turret lathe and that the surgery and resulting disability arose solely out of the 1970 injury. Relators' evidence, which included a movie, sought to establish that the movement that allegedly caused the injury

could be made with the right hand and that, if the left hand is used, no great force or pressure is required. Relators further assail the credibility of employee, arguing that his claims as to injury and disability, like his claims for travel expenses, are exaggerated. Relators' medical expert, Dr. Elmer R. Solovich, gave his opinion, based on a hypothetical question, that the previous injury was the cause of employee's problems and that the later work performed on the turret lathe at Parten was not a significant causal factor in his need for surgery. He stated that if the job were performed as it was depicted in the movie it was probably not an aggravating factor.

■ Questions of credibility and the weight to be given testimony by laymen and experts are uniquely the function of the court of appeals. In reviewing its findings, this court will not determine whether on the facts the decision is correct or even preferable to another but only whether it has sufficient basis of inference reasonably to be drawn from the facts. *Fisher v. Fisher,* 226 Minn. 171, 32 N.W.2d 424 (1948). Here, we find there is ample evidence to sustain the factual findings.

Employee testified at length about how he had to strike and put pressure on the machine with his left hand while operating it. He said that his hand became stiff, swollen, and sore and that he eventually consented to have further surgery. Furthermore, his testimony controverted evidence concerning the manner or force needed to operate a turret lathe. He testified that compared to the operation of the machine in the movie he had operated the machine in January 1976 at a higher speed; that the tool-post-holder feed was running three times faster; and that he had been making heavier cuts into the pieces he was working on. He stated that when he was operating the machine the tool post holder had more pressure on it than the holder in the movie, and consequently he had to put more force on the holder to tighten it and he had to hit it harder to loosen it.

Dr. Solovich's expert testimony was contradicted by Dr. Lenscheid, employee's treating physician, who gave his opinion that operating the turret lathe was a substantial factor in aggravating the previous hand injury and in reirritating employee's radial nerve, thus bringing on his problems and the need for his subsequent surgery.

■ It is axiomatic that a conflict in the evidence as well as in the opinions of expert medical witnesses is to be resolved by the trier of fact. As stated in *Golob v. Buckingham Hotel,* 244 Minn. 301, 304, 69 N.W.2d 636, 639 (1955):

" * * * [U]ntil the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact. Where qualified medical witnesses differ as they do here, it ordinarily is not for us on appeal to say that one is so eminently right and the other so clearly wrong that the fact finder was obliged to accept the opinion of one and discard the opinion of the other. The determination of this question is like the determination of any other question of fact, and it must depend to a large extent upon the credibility attached by the trier of facts to the opinion and testimony of the various witnesses who are expressing their opinions."

Although the evidence is conflicting, there is ample evidence to support the factual determination in this case.

■ Relators also challenge the finding of temporary total disability from January 22, 1976, the date of the aggravated injury, to the present. It is argued that, except for an attempt to get a job as a car salesman, employee has made no serious effort to obtain reemployment. At the hearing, however, that issue was not litigated by the parties. No testimony was offered as to the duration of the healing period or that work which employee is able to perform was either offered by Parten or was available elsewhere. Where the parties fail to fully litigate an issue below, we cannot determine it on appeal.

Relators also claim that employee's travel and other incidental expenses submitted by him to Federated Insurance Company as part of his claim for medical expenses were, for the most part, inflated and unreasonable. The court of appeals stated in its memorandum that the record was not clear on this issue and indicated that either party could petition the compensation judge for further clarification and determination. The issue is thus not here for final review. *Hillerns v. Minnesotan Hotel,* 271 Minn. 101, 135 N.W.2d 63 (1965).

We agree with relators that reimbursement from the Fund should be for compensation and medical costs paid in excess of 26 weeks and $1,000 and not, as ordered by the court of appeals pursuant to Minn.St. 176.131, subd. 1, for such benefits in excess of 52 weeks and $2,000. Relators correctly contend that the registration of employee's first injury, which occurred prior to the 1971 amendments that changed the reimbursement threshold from 26 weeks and $1,000 to 52 weeks and $2,000, was the controlling event which should cause the pre-1971 threshold to apply. See, L.1971, c. 589.

While the state treasurer, who is custodian of the Fund and a party to this litigation throughout, did not file a brief on appeal, it is clear that the issue is controlled by *Miller v. Norris Creameries,* Minn., 250 N.W.2d 161 (1976), filed after the compensation judge's order. There, the employee's back disability was registered in 1970. When he sustained a second back injury in 1972, the question presented was whether the registration or the second injury was the event which determined the applicable law. We held that "the 1971 amendment to subds. 1 and 2 of Minn.St.1969, § 176.131, must be construed to apply only to employees registered after the effective date of that amendment." 250 N.W.2d 163. This was in keeping with the court's earlier holding in *Miller v. Norris Creameries,* 306 Minn. 79, 83, 235 N.W.2d 203, 205 (1975), that "the right to reimbursement from the special compensation fund vests in the employer and its insurer on the date that an employee is registered as suffering from a preexisting physical impairment."

Relators also maintain that the court of appeals erred in awarding attorneys fees. Minn.St. 176.081, subd. 8, provides:

"Where compensation benefits are payable under this chapter, and a dispute exists between two or more employers or two or more insurers as to which is liable for payment, and litigation ensues to resolve such dispute, the employee shall be awarded against the party held liable for the benefits, the reasonable attorney fees, costs and disbursements he incurs to protect his rights, even if he is being voluntarily paid benefits by one of the parties to the dispute."

Finding this statute applicable, the compensation judge awarded 25 percent of the first $4,000 of compensation and 20 percent thereafter, up to a maximum of $5,000, as attorneys fees. The court of appeals affirmed relators' liability for the fees under the statute but set the amount at $3,000.

Relators contend that this award was made "merely because an employer and insurer for a prior injury were also named in the claim petition." If this is meant to imply that a genuine dispute between two employers or two insurers is required, it is a meritorious argument; an employee should not be awarded attorneys fees simply by naming a prior employer in his petition. Here, however, relators' pleadings indicate, as does the record, that the claim that employee's injury is solely the result of the 1970 trauma is central to relators' defense. Thus, for example, relators' petition for temporary order asserts that "[i]t is apparent that the present disability and surgery arises out of the 1970 injury." Relators' answer to the claim petition admits that employee was injured in 1970 but denies the 1976 injury. In fact, the principal issue raised in the present appeal is relators' claim that there was no 1976 injury. It was necessary for employee's prior employer and insurer to appear throughout these proceedings in support of their contention that employee incurred a second injury. Accordingly, the record supports the award.

Relators' final claim—that the compensation judge erred in ordering employee to report to the Division of Vocational Rehabilitation for "evaluation and certification for retraining"—is clearly without merit.

Employee is allowed attorneys fees in the amount of $400.

Affirmed in part; reversed in part.